Filed 10/29/13

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u><sup>*</sup>


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DOUGLAS HAROLD DOYLE,<br><br>    Defendant and Appellant. | C067741<br><br>(Super. Ct. No.<br>72-005365) |


APPEAL from a judgment of the Superior Court of Placer County, Colleen M. Nichols, Judge.  Affirmed.

Michelle May, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Wanda Hill Rouzen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

*  Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts III through V.

1

Defendant Douglas Harold Doyle was previously convicted of gross vehicular manslaughter while intoxicated (driving under the influence [DUI] manslaughter). (Pen. Code, § 191.5, subd. (a).) The conviction in this case was for another DUI offense. (Veh. Code, § 23152, subd. (b).) His current DUI was elevated from a misdemeanor to a felony because of the prior DUI manslaughter (Veh. Code, § 23550.5, subd. (b)), and he was sentenced under the "Three Strikes" law to 25 years to life in state prison with the prior DUI manslaughter as one of his strikes.

On appeal, defendant contends that it was illegal to use the prior DUI manslaughter conviction both to elevate the current DUI to a felony and to serve as a strike. To the contrary, the statutory scheme authorizes both uses.

Defendant also contends that use of the prior DUI manslaughter conviction both to elevate the current DUI to a felony and to serve as a strike violates equal protection guarantees because the statute elevating the current DUI to a felony as a result of the DUI manslaughter does not also elevate a current DUI to a felony if the offender, instead, has a prior conviction for second degree murder while driving intoxicated. This argument is unpersuasive because DUI offenders with prior DUI manslaughter convictions and those with prior second degree murder convictions are not similarly situated.

Because neither these nor any other of defendant's arguments has merit, we affirm.

FACTS

Under the influence of valium, cocaine, and alcohol, defendant nonetheless got behind the wheel of his van in December 1987. Going southbound on Highway 89, defendant sped around a blind curve in the oncoming lane to pass cars in his own lane. He hit an oncoming car head-on, killing the driver of the oncoming car. As a result, in 1988, he pleaded guilty to DUI manslaughter. (Pen. Code, § 191.5, subd. (a).)

2

The 1988 DUI manslaughter conviction was not defendant's first brush with the law, and it would not be his last. Most seriously, defendant was convicted of spousal abuse in 1996 and assault with a deadly weapon in 2007.

In August 2008, defendant again drove drunk on Highway 89, this time northbound, and again he passed on a blind curve. Fortunately, defendant did not cause another collision, and, again fortunately, a sheriff's deputy saw the unsafe driving and stopped defendant. After observing that defendant was drunk, the deputy arrested defendant for DUI.

PROCEDURE

The district attorney charged defendant by information with felony DUI, with a prior DUI manslaughter. (Veh. Code, §§ 23152, subds. (a) & (b), 23550.5, subd. (b).) The district attorney also alleged that defendant had two prior strike convictions (the 1988 DUI manslaughter conviction (Pen. Code, § 191.5) and a 2007 assault with a deadly weapon conviction (Pen. Code, § 245)) and had four prior prison terms (Pen. Code, § 667.5, subd. (b)).

Defendant pleaded guilty to felony DUI,[1] with a prior DUI manslaughter. He also admitted the prior serious felony convictions and prison terms. He did so with the understanding that this exposed him to a potential sentence of 29 years to life under the Three Strikes law.

---

[1] More specifically, defendant pleaded guilty to driving with a blood alcohol level of .08 percent or more. Since, for the purposes of this opinion, there is no practical difference between driving with a blood alcohol level of .08 percent or more (Veh. Code, § 23152, subd. (b)) and driving under the influence (Veh. Code, § 23152, subd. (a)), we refer to the crime as a DUI. We also use the term "drunk driver" as a shorthand for describing a person who drives with a blood alcohol level of .08 percent or more or who drives while under the influence.

The trial court considered and denied a *Romero*[2] motion to strike one or both of the prior serious felony convictions. The court sentenced defendant under the Three Strikes law to state prison for an indeterminate term of 25 years to life. It stayed the prior prison term enhancements.

DISCUSSION

I

*Use of Prior DUI manslaughter*

A DUI -- violation of Vehicle Code section 23152 -- is normally a misdemeanor. However, if the defendant has a prior DUI manslaughter conviction (Pen. Code, § 191.5), the DUI may be charged as a felony, as was the case here. (Veh. Code, § 23550.5; *People v. Baez* (2008) 167 Cal.App.4th 197, 199.)

Defendant contends that his prior DUI manslaughter conviction cannot be used twice to (1) elevate his current DUI to a felony and (2) impose Three Strikes sentencing. To the contrary, the applicable statutes and precedents allow both uses.

We look first to the legislative intent and discern no indication that the Legislature intended to preclude the use of a prior DUI manslaughter both to elevate a DUI to a felony and to serve as a strike. We then turn to defendant's arguments for limiting such use and find them unavailing.

A.    *Legislative Intent and Case Law*

The fundamental goal of statutory construction is to determine the Legislature's intent. We begin with the ordinary and usual meaning of the language the Legislature used, and we do not alter that meaning if it is clear. We resort to extrinsic aids to understand the Legislature's intent only if the Legislature's language can reasonably be interpreted more than one way. (*People v. Cornett* (2012) 53 Cal.4th 1261, 1265.)

---

**2**      *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

Applying these fundamental canons of statutory construction, we examine the applicable statutes to determine whether they evince any legislative intent to preclude the use of a prior DUI manslaughter both to elevate a DUI to a felony and to serve as a strike.[3] We discern no such intent.

In 1994, the Three Strikes law was enacted by both the Legislature and the voters in nearly identical form. (Stats. 1994, ch. 12, § 1, p. 71, eff. Mar. 7, 1994; Prop. 184, eff. Nov. 9, 1994.) Under this law, a person who commits a felony and has previously been convicted of one or more serious or violent felonies is sentenced to a longer state prison term. (Pen. Code, § 667, subd. (b).) The term for such a person with one prior serious or violent felony is twice the term otherwise provided for the current felony. The term for such a person with two or more prior serious or violent felonies, as applicable to this case, is an indeterminate term of 25 years to life. (Pen. Code, § 667, subd. (e).)

There is no dispute in this case that defendant's 1988 DUI manslaughter conviction (Pen. Code, § 191.5, subd. (a)) and 2007 assault with a deadly weapon conviction (Pen. Code, § 245) were for serious or violent felonies under the Three Strikes law. Defendant admitted the district attorney's allegation that they were strikes under the Three Strikes law.

In 1997, the Legislature enacted a statute making it a felony or misdemeanor (a "wobbler") if a person committed a DUI with a prior DUI manslaughter. (Stats. 1997,

---

[3]     The Attorney General claims that, in 2001, the Assembly Committee on Appropriations, considering an amendment to Vehicle Code section 23550.5, which amendment ultimately was enacted, recognized that a prior DUI manslaughter conviction would both elevate a current DUI to a felony and serve as a strike under the Three Strikes law. The Attorney General, however, did not request judicial notice of the committee report. Therefore, we disregard the claim concerning the committee report. (Ct. App., Third Dist., Local Rules, rule 4, Judicial Notice of legislative history materials; *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26.) In any event, we find no ambiguity in the statutes requiring resort to legislative history.

5

ch. 901, § 6, p. 6488.) That statute became Vehicle Code section 23550.5 in 1999. (Stats. 1998, ch. 118, § 84, p. 784.) Subdivision (b) of Vehicle Code section 23550.5 states: "Each person who, having previously been convicted of a violation of subdivision (a) of Section 191.5 of the Penal Code [DUI manslaughter], . . . is subsequently convicted of a violation of [Vehicle Code] Section 23152 [DUI] . . . is guilty of a public offense punishable by imprisonment in the state prison [a felony] or confinement in a county jail for not more than one year [a misdemeanor] . . . ."

In this case, the district attorney prosecuted the current DUI offense as a felony under Vehicle Code section 23550.5, subdivision (b), and defendant pleaded guilty to that charge. Therefore, he was convicted of a felony.

At sentencing, the trial court applied the Three Strikes law to defendant's felony sentencing, which is required under Penal Code section 667, subdivision (e). The introductory language of that subdivision states that the Three Strikes sentencing scheme applies "in addition to any other enhancement or punishment provisions which may apply . . . ." (Pen. Code, § 667, subd. (e).) Because defendant was convicted of a felony and had two prior serious or violent felony convictions, the trial court sentenced him to an indeterminate term of 25 years to life.

This was a faithful application of the ordinary and usual meaning of the applicable statutes. Nothing in the language of the statutes evinces a legislative intent to impose the Three Strikes law differently. To the contrary, the Three Strikes law is meant "to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses." (Pen Code, § 667, subd. (b).) Accordingly, we must uphold the sentence imposed unless defendant's arguments on appeal establish that the sentence was illegal.

Before turning to defendant's arguments, however, we discuss the case most similar to the circumstances of this case. That case is *People v. White Eagle* (1996) 48 Cal.App.4th 1511 (*White Eagle*). In *White Eagle*, the defendant pleaded guilty to petty

6

theft with a prior robbery and admitted the prior robbery conviction, which is a serious or violent felony under the Three Strikes law. (*Id.* at p. 1515.) Normally, petty theft is a misdemeanor, but the prior robbery conviction made the petty theft conviction a wobbler. (Pen. Code, § 666, subd. (a).) Applying the Three Strikes law because of the defendant's prior robbery conviction, the trial court treated the petty theft as a felony and sentenced the defendant to six years in state prison, which is double the aggravated term. (*White Eagle, supra,* at p. 1515; see Pen. Code, §§ 666, subd. (a), 667, subd. (e)(1), 1170, subd. (h).)

On appeal, the *White Eagle* court considered "whether the same 1981 robbery conviction can be used: (1) to convert the current offense to a felony under [Penal Code] section 666 [and] (2) to invoke the punishment provisions of [Penal Code] section 667, subdivision (e)(1) . . . ." (*White Eagle, supra*, 48 Cal.App.4th at p. 1516.) The court concluded that the prior conviction could be used for both. (*Id.* at pp. 1517-1518.)

The *White Eagle* court reasoned: "The drafters of the Three Strikes law have clearly provided that its punishment provisions apply 'in addition to any other *enhancement or punishment provisions* which may apply.' ([Pen. Code,] § 667, subd. (e), italics added.) Applying the sentencing provisions of the Three Strikes law to the term of imprisonment provided by [Penal Code] section 666 is not only consistent with the stated legislative and initiative goals of ensuring longer prison sentences and greater punishment for repeat offenders, it is provided for by the express terms of the statute. ([Pen. Code,] § 667, subd. (b).)" (*White Eagle, supra*, 48 Cal.App.4th at p. 1518.)

*White Eagle* is on all fours with this case concerning using a prior conviction both to elevate the current offense to a felony and to serve as a strike under the Three Strikes law. Despite this obvious similarity of *White Eagle* to this case, however, defendant did not cite or discuss *White Eagle* in his opening brief. In his reply brief, he claims that *White Eagle* is distinguishable based on the cases cited in his opening brief. Although we note that, by ignoring *White Eagle* until his reply brief, defendant effectively prevented

the Attorney General from submitting a brief concerning defendant's arguments that *White Eagle* is distinguishable, we exercise our discretion to consider defendant's arguments. (See *Jameson v. Desta* (2009) 179 Cal.App.4th 672, 674, fn. 1 [appellate court may exercise discretion to consider points not raised in opening brief].)

While *White Eagle* is similar to this case because the same prior conviction was used both to elevate the current offense to a felony and to impose Three Strikes sentencing, another case, *People v. Coronado* (1995) 12 Cal.4th 145 (*Coronado*), is also similar to this case, but for a different reason. It determined that the Legislature intended to allow use of prior DUI convictions both to elevate the current offense to a felony and to impose prior prison term enhancements under Penal Code section 667.5, subdivision (b), for prison terms served as a result of the prior DUI convictions. The court said: "We hold here that the use of a prior conviction and resulting prison term for elevation and enhancement purposes is consistent with the *legislative intent . . . .*" (*Id*. at p. 149, italics added.)

Considered together, *White Eagle* and *Coronado* support application of the Legislature's express intent to impose Three Strikes sentencing in this case "in addition to any other enhancement or punishment provisions which may apply" (Pen. Code, § 667, subd. (e)), "to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses." (Pen. Code, § 667, subd. (b).)

Finally, defendant urges that, to avoid serious constitutional questions, we must adopt an interpretation of the relevant statutes prohibiting the use of the prior DUI manslaughter both to elevate the current offense to a felony and to serve as a strike. (See *People v. Engram* (2010) 50 Cal.4th 1131, 1161.) Elsewhere in his brief, defendant makes arguments that the sentence is cruel and unusual and violates double jeopardy. Therefore, he reasons, those questions can be avoided with his preferred interpretation of the statutes. This line of argument is without merit because (1) despite defendant's

8

constitutional claims, there is no serious question concerning the constitutionality of defendant's sentence and (2) his preferred interpretation is contrary to the Legislature's express intent.

B.     *Defendant's Arguments*

Defendant makes four arguments, relying on four cases, that the Legislature could not use the prior DUI manslaughter both to elevate the current offense to a felony and to serve as a strike.  The four cases are (1) *People v. Briceno* (2004) 34 Cal.4th 451 (*Briceno*); (2) *In re Shull* (1944) 23 Cal.2d 745 (*Shull*), superseded by statute on another issue as stated in *People v. Read* (1983) 142 Cal.App.3d 900, 904; (3) *People v. Jones* (1993) 5 Cal.4th 1142 (*Jones*); and (4) *People v. Ireland* (1969) 70 Cal.2d 522 (*Ireland*).

1.     *Briceno*

Relying on *Briceno*, defendant contends that the trial court engaged in " 'impermissible bootstrapping.' "  We conclude that, because defendant is not in this regard arguing a constitutional limitation on the Legislature's power, what the statutes allow is permissible if the Legislature intended to permit it.  Here, as we have stated, the Legislature intended to allow use of the prior DUI manslaughter both to elevate the offense to a felony and to serve as a strike.

In *Briceno*, a jury convicted the defendant of four counts of robbery and found true the allegation that the robberies were committed for the benefit of a criminal street gang.  The court found true two prior serious felony convictions and sentenced the defendant under Three Strikes law.  (*Briceno, supra,* 34 Cal.4th at pp. 456-457.)  As relevant here, the Supreme Court in *Briceno* considered the relationship of (1) Penal Code section 1192.7, subdivision (c)(28), which turns any *prior* felony conviction into a serious felony conviction for the purpose of the Three Strikes law if the prior offense was committed for the benefit of a criminal street gang, and (2) Penal Code section 186.22, subdivision (b)(1)(A), which provides for a sentence enhancement for a *current* felony, other than a serious or violent felony.  The Court of Appeal had problems defining this

9

relationship because it believed both provisions applied to the *prior* felony conviction. The Supreme Court, however, focusing on legislative intent (in that case, voters' intent because it was an initiative) (*id.* at p. 459), found that there is no conflict because Penal Code section 1192.7, subdivision (c)(28) applies to *prior* convictions and Penal Code section 186.22, subdivision (b)(1)(A) applies to *current* offenses. (*Id.* at pp. 464-465.)

Having resolved the issue by determining the voters' intent, the *Briceno* court added: "Not only does this interpretation give meaning to [Penal Code] section 186.22[, subdivision] (b)(1)(A), (B), and (C), it also avoids the impermissible bootstrapping that would occur if any felony that is gang related is also deemed serious in the current proceeding. Specifically, while it is proper to define any felony committed for the benefit of a criminal street gang as a serious felony under [Penal Code] section 1192.7[, subdivision] (c)(28), it is improper to use the *same* gang-related conduct *again* to obtain an additional five-year sentence under [Penal Code] section 186.22[, subdivision] (b)(1)(B)." (*Briceno, supra,* 34 Cal.4th at p. 465, original italics.)

Defendant relies on this "impermissible bootstrapping" language to argue that, here, the prior DUI manslaughter conviction cannot be used both to elevate the current offense to a felony and to serve as a strike. The argument is without merit because the Supreme Court's "impermissible bootstrapping" language referred to a manifest voter intent not to allow such use. The court stated: "[A]lthough [Penal Code] section 1192.7[, subdivision] (c)(28) turns any prior gang-related felony offense into a strike if a defendant reoffends, nothing in Proposition 21 or in its stated purposes suggests an intention of the voters to bootstrap, in the same proceeding, any felony offense committed for the benefit of a criminal street gang into a [Penal Code] section 186.22[, subdivision] (b)(1)(B) [serious felony] offense 'as a means of applying a double dose of harsher punishment.' [Citation.]" (*Briceno, supra,* 34 Cal.4th at p. 465.) In other words, bootstrapping was not permissible because the voters did not intend to permit it.

10

As we have noted, the statutes involved in this case do not evince a legislative intent to preclude use of a prior DUI manslaughter both to elevate the offense to a felony and to serve as a strike. Therefore, the "impermissible bootstrapping" language of *Briceno* is wholly inapplicable. Indeed, there is no abstract anti-bootstrapping principle. Instead, it is a matter of legislative intent. If the Legislature intended to allow it, it is allowed. The *Briceno* court did not resort to any constitutional principle limiting the power of the Legislature in such matters.

2.       *Shull*

Likewise, the second case relied on by defendant involved a question of legislative intent. In *Shull*, the Supreme Court considered whether the Legislature intended to add a five-year enhancement for use of a pistol to a sentence of 10 years for assault with a pistol. (*Shull, supra,* 23 Cal.2d at pp. 747-749.) It concluded: "We do not believe . . . that the Legislature intended that [the pistol-use enhancement] should be applied where the felony of which the person stands convicted is that of assault with a pistol . . . ." (*Id.* at p. 749.)

The *Shull* court determined that the Legislature did not intend to add the sentencing enhancement for pistol use to the sentence for assault with a pistol. It said: "Briefly, the Legislature has fixed the punishment for an assault where a deadly weapon is used, a particular crime, and it is not to be supposed that for the same offense without any additional factor existing the added punishment should be imposed." (*Shull, supra,* 23 Cal.2d at p. 751.)

While the Legislature may have implicitly intended not to impose the gun-use enhancement when the defendant was convicted of assault with a pistol, as stated in *Shull*, the Legislature's intent with respect to the Three Strikes is explicit. It requires application of the Three Strikes law "in addition to any other enhancement or punishment provisions which may apply . . . ." (Pen. Code, § 667, subd. (e).) Therefore, the *Shull* court's opinion as to the Legislature's implicit intent there has no bearing on this case, in

11

which the Legislature's intent is stated in the statute.  (See also *People v. Chambers* (1972) 7 Cal.3d 666, 671-672 [noting that, since *Shull*, the Legislature has left no doubt concerning additional punishment when use of a weapon is also an element of the offense].)

### 3.	*Jones*

In *Jones*, the Supreme Court determined that, under the statutes then effective, the Legislature did not intend to impose two cumulative enhancements for the same prior kidnapping conviction.  (*Jones, supra,* 5 Cal.4th at pp. 1149-1152.)  Again, *Jones* dealt with legislative intent, which we have already discussed with respect to the statutes applicable to this case.  Furthermore, *White Eagle*, which defendant ignored in his opening brief, found *Jones* distinguishable because of the clear intent expressed in the Three Strikes law to impose Three Strikes sentencing in addition to other punishment provisions.  (*White Eagle, supra,* 48 Cal.App.4th at pp. 1517-1518.)

### 4.	*Ireland*

Finally, defendant relies on *Ireland* and the Supreme Court's recent application of *Ireland*'s second degree felony-murder merger doctrine in *People v. Chun* (2009) 45 Cal.4th 1172 (*Chun*).  In *Ireland*, the court held that assault "merges" with homicide so that assault cannot be the underlying felony used to support second degree felony murder. (*Ireland, supra,* 70 Cal.2d at pp. 539-540.)

Defendant quotes this excerpt from *Ireland*:  "To allow such use of the felony-murder rule would effectively preclude the jury from considering the issue of malice aforethought in all cases wherein homicide has been committed as a result of a felonious assault -- a category which includes the great majority of all homicides.  This kind of bootstrapping finds support neither in logic nor in law.  We therefore hold that a second degree felony-murder instruction may not properly be given when it is based upon a felony which is an integral part of the homicide and which the evidence produced by the

prosecution shows to be an offense included in fact within the offense charged."
(*Ireland, supra,* at p. 539, italics & fn. omitted.)

While this may sound like an abstract anti-bootstrapping principle unhinged from the Legislature's intent, the majority in *Chun* held that the merger rule is consistent with the *purpose* of the second degree felony-murder rule, which the court took great pains to establish is a statutory rule. (*Chun, supra,* 45 Cal.4th at pp. 1183-1188 [second degree felony murder is statutory], 1198-1200 [merger doctrine is consistent with purpose of second degree felony murder].)

As the merger rule is so specific to the homicide doctrines discussed in *Ireland* and *Chun*, there can be no persuasive argument that the merger rule applies here. Trying to make an argument, defendant merely states that *Ireland* prohibits "bootstrapping," but his statement has no persuasive effect on our interpretation of the statutes applicable to this case, which are dissimilar to substantive homicide doctrines. Therefore, *Ireland* does not support defendant's argument.

## II

### *Equal Protection*

Defendant contends that the Three Strikes sentence violates his equal protection rights under the federal and state Constitutions. He argues that the Legislature's scheme for elevating DUI offenses to felonies with potential Three Strikes sentencing because of the offender's prior DUI manslaughter conviction fails constitutional scrutiny because other DUI offenders with more egregious prior crimes (such as murder) are convicted only of misdemeanors for their current DUI offenses and are not subject to Three Strikes sentencing. The contention is without merit because DUI offenders with prior DUI manslaughter convictions are not similarly situated with DUI offenders who have prior convictions other than for DUI manslaughter. Based on this equal protection argument, defendant also claims the different treatment violates his due process rights and right not

13

to be subjected to cruel and unusual punishment.  These separate claims are both without merit.

>        A.        *Not Similarly Situated*

Equal protection under the state and federal Constitutions requires that persons similarly situated must receive like treatment under the law.  (*In re Eric J.* (1979) 25 Cal.3d 522, 531.)  Therefore, "[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner."  (*Id*. at p. 530, italics omitted.)

While defendant mentions several hypothetical prior convictions for unrelated crimes (such as rape, child molestation, and robbery), he focuses on comparing punishment when a defendant has a prior conviction for a drunk driving second degree murder and, as here, another defendant has a prior conviction for a DUI manslaughter.  Following his lead, we focus on that comparison.

A DUI manslaughter is committed when a drunk driver, without malice, kills someone.  (Pen. Code, § 191.5, subd. (a).)  The punishment for the offense is four, six, or 10 years in state prison.  (Pen. Code, § 191.5, subd. (c)(1).)  If the intoxicated killer drove while aware of the risk to life and consciously disregarded that risk, then the killer committed second degree murder (see *People v. Watson* (1981) 30 Cal.3d 290 (*Watson*)), a *Watson* murder.  Punishment for second degree murder is 15 years to life in state prison.  (Pen. Code, § 190, subd. (a).)  DUI manslaughter is not a lesser included offense of a *Watson* murder.  (*People v. Sanchez* (2001) 24 Cal.4th 983, 990-992.)

Defendant ignores this significant difference in sentencing between a determinate term for DUI manslaughter and an indeterminate term -- a life sentence -- for a *Watson* murder.  Instead, he cites only the differences in how prior convictions for these crimes are treated.  He notes that, because he has a prior DUI manslaughter conviction, his

current DUI is elevated to a felony DUI and subjects him to Three Strikes sentencing. In comparison, a DUI offender with a prior *Watson* murder is guilty of a misdemeanor only.

We recognize that the two schemes are very different. A *Watson* murder is punished much more severely upon conviction, but does not result in felony status or a longer sentence if the offender commits a later DUI. On the other hand, a DUI manslaughter is punished with a shorter determinate sentence, but can be used to impose much longer incarceration if the offender later commits a DUI. As we explain, this different treatment is the result of rational legislative choices rather than being unconstitutional disparate treatment because DUI offenders with a prior DUI manslaughter conviction are not similarly situated with DUI offenders with a prior *Watson* murder conviction.[4]

Generally, offenders who commit different crimes are not similarly situated. (*People v. Macias* (1982) 137 Cal.App.3d 465, 472-473.) In *People v. Dillon* (1983) 34 Cal.3d 441, the Supreme Court rejected an equal protection challenge to the felony-murder rule simply by observing that premeditated first degree murder and felony murder are "not the 'same' crime[] . . . ." (*Id.* at p. 476, fn. 23; see also *People v. Jacobs* (1984) 157 Cal.App.3d 797, 803-804.) Therefore, a DUI offender with a prior DUI manslaughter conviction is not similarly situated with a DUI offender with a prior *Watson* murder conviction.

But there may be times when the general rule does not apply, when offenders who commit different crimes *are* similarly situated. (*People v. Hofsheier* (2006) 37 Cal.4th

---

[4]    We recognize that a *Watson* murder is not a specific crime enacted by the Legislature, but instead is a judicially created theory for prosecuting vehicular homicide as second degree murder in cases involving implied malice. (But see Pen. Code, §§ 191.5, subd. (e), 192, subd. (c)(3) [recognizing the *Watson* murder theory].) Nonetheless, we see no reason not to apply an equal protection analysis to the disparate treatment noted by defendant in this case.

15

1185, 1199-1200 (*Hofsheier*).)  The *Hofsheier* court held that offenders who commit different crimes are similarly situated for equal protection analysis when the crimes are not sufficiently different to justify different treatment.  (*Id*. at p. 1200.)

In *Hofsheier*, the court considered mandatory sex offender registration.  State law required adults convicted of voluntary *oral copulation* with a minor 16 years or older to register for life as a sex offender; however, state law did not require adults convicted of voluntary *sexual intercourse* with a minor 16 years or older to register unless the trial court exercised its discretion to require registration.  (*Hofsheier, supra,* 37 Cal.4th at p. 1198.)

The *Hofsheier* court held that the general rule (offenders who commit different crimes are not similarly situated) cannot be an absolute rule "because the decision of the Legislature to distinguish between similar criminal acts is itself a decision subject to equal protection scrutiny."  (*Hofsheier, supra,* 37 Cal.4th at p. 1199, fn. omitted.)  The equal protection clause " 'imposes a requirement of some rationality in the nature of the class singled out.' [Citations.]  Otherwise, the state could arbitrarily discriminate between similarly situated persons simply by classifying their conduct under different criminal statutes. [Citation.]" (*Ibid*.)

Turning to its own facts, the *Hofsheier* court declared:  "The only difference between the two offenses is the nature of the sexual act.  Thus, persons convicted of oral copulation with minors and persons convicted of sexual intercourse with minors 'are sufficiently similar to merit application of some level of scrutiny to determine whether distinctions between the two groups justify the unequal treatment.' [Citation.]" (*Hofsheier, supra,* 37 Cal.4th at p. 1200.)

While the Supreme Court has not provided a bright-line rule for when those committing different crimes must be treated similarly, there can be no doubt that those who are convicted of a manslaughter can be treated differently from murderers.  Specifically, DUI manslaughter and a *Watson* murder are not sufficiently similar to

require similar treatment. A DUI manslaughter is committed by causing a death, without malice, while driving under the influence. (Pen. Code, § 191.5, subd. (a).) A *Watson* murder, on the other hand, requires implied malice. (*Watson, supra,* 30 Cal.3d 290.) Implied malice has both physical and mental components, "the physical component being ' "the performance of 'an act, the natural consequences of which are dangerous to life,' " ' and the mental component being ' "the requirement that the defendant 'knows that his conduct endangers the life of another and . . . acts with a conscious disregard for life.' " ' [Citation.]" (*People v. Cravens* (2012) 53 Cal.4th 500, 508.) The critical difference between a DUI manslaughter and a *Watson* murder is the mental component, malice or conscious disregard for the life of another. A *Watson* murder, therefore, is more morally blameworthy than DUI manslaughter.

"The appropriate measure for punishment is individual culpability. [Citation.] It is the prerogative of the Legislature, and the electorate by initiative, to recognize degrees of culpability and penalize accordingly. [Citations.]" (*People v. Jacobs, supra,* 157 Cal.App.3d at p. 804, fn. omitted.) And "[t]he fact that the Legislature has not included a small class of almost similarly situated persons in the disfavored class does not invalidate the legislation as to the disfavored class. There is no requirement that the Legislature penalize all culpable conduct or precisely structure penal sanctions so that all degrees of culpability are omnisciently placed in their proper place in some continuum of penalties." (*In re Sims* (1981) 117 Cal.App.3d 309, 314, fn. 1.)

Therefore, because a DUI manslaughter and a *Watson* murder are so different as to culpability, the Legislature's different treatment of DUI offenders with prior convictions for DUI manslaughter or a *Watson* murder is permissible under the equal protection clause.

Defendant argues that the disparate treatment does not pass constitutional muster because, in his view, a person convicted of DUI manslaughter is treated more harshly than a person convicted of a *Watson* murder, even though the *Watson* murder is more

17

blameworthy morally.  He bases his view completely on the later effect of convictions for DUI manslaughter and a *Watson* murder when the offender commits a new DUI. However, this view can be sustained only if one ignores the difference in original sentencing for offenders convicted of DUI manslaughter (a determinate term of no more than 10 years (Pen. Code, § 191.5, subd. (c)(1)), plus up to three years of parole (Pen. Code, § 3000, subd. (b)(2)) and a *Watson* murder (an indeterminate term of up to life (Pen. Code, 190, subd. (a)), plus parole for life after release (Pen. Code, § 3000.1, subd. (a)(1)).  This difference can be attributed simply to the Legislature's determination to punish murderers more harshly up front and to be more lenient with those convicted of manslaughter, while providing for harsher punishment for those convicted of manslaughter if they later commit a crime that shows they have not reformed.  There is "some rationality" in this distinction.  (*Hofsheier, supra,* 37 Cal.4th at p. 1199.) Therefore, for equal protection analysis, DUI offenders with a prior DUI manslaughter conviction are not similarly situated with DUI offenders with a prior *Watson* murder conviction.

Having determined that defendant's argument is unpersuasive as to the first prong of equal protection analysis, we need not consider the second prong -- whether governmental interests justify disparate treatment -- because there is no requirement that persons in different circumstances must be treated as if their situations were similar.  (See *Hofsheier, supra,* 37 Cal.4th at p. 1200.)

B.     *Due Process and Cruel and Unusual Punishment Arguments*

Again ignoring the significant difference in original sentencing of an offender convicted of a *Watson* murder (15 years to life) and DUI manslaughter (four, six, or 10 years), defendant claims that the later use of the DUI manslaughter conviction to elevate a DUI to a felony and to impose Three Strikes sentencing violates (1) his right not to be subjected to cruel or unusual punishment and (2) his substantive due process rights.

18

### 1. Cruel or Unusual Punishment

Punishing a lesser included offense more severely than the greater offense is unusual punishment under the state Constitution. (*People v. Schueren* (1973) 10 Cal.3d 553, 560-561.) This principle, however, does not help defendant for two reasons: (1) DUI manslaughter is not a lesser included offense of a *Watson* murder (*People v. Sanchez, supra,* 24 Cal.4th at pp. 990-992) and (2) a *Watson* murder carries a more severe sentence, along with lifetime parole, which could be violated for committing a misdemeanor DUI.

### 2. Substantive Due Process

Finally, defendant asserts that the treatment of prior DUI manslaughter convictions, as compared to prior *Watson* murder convictions, is arbitrary and therefore violates his substantive due process rights. We need not consider the authorities defendant cites in support of this proposition because its premise fails: as we explained, there is "some rationality" in the way the law treats those who commit DUI manslaughters, as opposed to those who commit *Watson* murders.

### III

### Romero *Motion*

Defendant contends that the trial court abused its discretion by denying his *Romero* motion. He asserts that the court should have exercised its discretion to grant the motion because (1) one of the strikes was also used to elevate the current offense to a felony, (2) the trial court did not understand the scope of its discretion, and (3) the facts commanded exercise of discretion to grant the motion. We disagree.

#### A. *Legal Background*

A "judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." (Pen. Code, § 1385, subd. (a).) In *Romero*, *supra*, 13 Cal.4th 497, our Supreme Court held that a trial court may use this section to strike or vacate a prior strike

19

conviction for purposes of sentencing under the Three Strikes law.  We review denial of a *Romero* motion for abuse of discretion  (*People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony*).)

"In reviewing for abuse of discretion, we are guided by two fundamental precepts.  First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." '  [Citations.]  Second, a ' "decision will not be reversed merely because reasonable people might disagree.  'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " '  [Citations.]  Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it."  (*Carmony*, *supra*, 33 Cal.4th at pp. 376-377.)

The sentencing court should deny the *Romero* motion, unless it " ' "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." '  [Citation.]"  (*Carmony*, *supra*, 33 Cal.4th at p. 377.)  "[T]he court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."  (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*); see also *Carmony*, *supra*, 33 Cal.4th at p. 377.)

B.    *Analysis*

1.    Strike Used to Elevate Offense to Felony

Defendant contends that he is outside the spirit of the Three Strikes law because the prior DUI manslaughter conviction was used both to elevate the current offense to a felony and to serve as a strike.  To the contrary, the Three Strikes sentence was consistent with legislative intent concerning offenders such as this defendant.

Defendant asks:  "How is such a defendant within the 'spirit of the three-strikes law,' when he starts with a misdemeanor offense, and then it takes rejection of four different lines of Supreme Court authority -- three of which were in existence at the time the 'strikes law' was enacted -- plus double-counting the same bootstrapped prior conviction, to get him to a 'strikes' sentence?"  Defendant also says that applying the Three Strikes law here "requires so many backflips and cartwheels to bypass long-established anti-bootstrapping prohibitions in so many Supreme Court authorities . . . that it can no longer be deemed within the spirit of penal legislation in the State of California . . . ."

We need not restate the reasons that defendant's cited authority does not apply here.  Simply put, the sentence imposed was consistent with legislative intent, and the current argument is without merit.

2.    Trial Court's Understanding of Scope of Discretion

In denying the *Romero* motion, the trial court provided a lengthy analysis of the factors it considered.  Picking through the analysis, defendant perceives that the trial court did not understand the extent of its discretion under *Romero*.  That perception is unjustified.

After reviewing the proper context for its analysis of the *Romero* motion as stated by the Supreme Court in *Williams, supra,* 17 Cal.4th at page 161, the trial court provided seven reporter's transcript pages of analysis and reasons for denying the motion.  We

need not recount the analysis, but it suffices to say that the court considered the *Williams* factors and concluded that defendant falls within the spirit of the Three Strikes law.

Specifically, defendant quotes the following statement from the trial court's analysis:

"Striking one of the priors because a ten-year sentence is sufficient is really not a basis for granting a motion to strike a prior strike. It's not that I don't think a ten-year sentence wouldn't be sufficient. It's just that I have to have a legal basis in order to do that."

But defendant takes this quote out of context. The court continued:

"Unfortunately[,] [defendant's] record drops him squarely within the Three Strikes Law. His current offense is the same -- exactly the same as the original offense. The only difference is that no one was harmed. It was really striking to me and disturbing."

Defendant argues that, contrary to the trial court's statement, it had a legal basis for striking a prior. That basis, according to defendant, was his argument we rejected in part I of the Discussion. Again, we need not rehash the reasons for rejecting this argument.

Considering the entire context of the trial court's analysis and its statement of the appropriate legal principles to be applied, we conclude the trial court did not misunderstand the scope of its discretion with respect to defendant's *Romero* motion.

### 3. Facts of This Case

Finally, defendant asserts that the facts of this case can lead to no other reasonable conclusion but that the trial court should have exercised its discretion to grant the *Romero* motion. He employs such reasoning as (1) his sentence is effectively life without possibility of parole, (2) he is an alcoholic, (3) he could take medication that would make him ill if he drank, (4) he is aware of the terrible consequences of his drinking, and (5) he has matured since his most recent offense. We need not search the record and debunk this argument factually, as the trial court did to some extent in its ruling because, even if

22

the facts that defendant argues are true, they do not establish that the trial court's ruling was "so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, *supra*, 33 Cal.4th at p. 377.)

Defendant's argument that the trial court's denial of his *Romero* motion was an abuse of discretion is without merit.

IV

*Cruel and Unusual Punishment*

Defendant makes an additional argument that using a prior DUI manslaughter conviction to elevate a DUI to a felony and to serve as a strike violates his right not to be subjected to cruel and unusual punishment because it is "freakish." Mainly, defendant simply reiterates his arguments about "bootstrapping," "double-stacking," "double-counting," and "double-elevating," which arguments we have already debunked. Defendant also reiterates his argument that the scheme is irrational. Likewise, we have debunked that argument.

The statutes providing for elevation of defendant's DUI to a felony and for Three Strikes sentencing are valid because the state has an "interest, expressed in all recidivist statutes, in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law." (*Rummel v. Estelle* (1980) 445 U.S. 263, 276 [63 L.Ed.2d 382, 392].) The "primary goals [of a recidivist statute] are to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes. . . . [T]he point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be

23

isolated from society are matters largely within the discretion of the punishing jurisdiction." (*Id*. at pp. 284-285.)

Defendant took a life while driving drunk in 1988. He also committed spousal abuse in 1996 and an assault with a deadly weapon in 2007. Despite defendant's dangerous behavior, he was permitted to regain his freedom. Now that he has returned to the behavior that resulted in a death before, society is not required to continue taking chances on him. Long-term incarceration is the rational and reasonable response to defendant's incorrigibility. The Three Strikes sentence is neither cruel nor unusual.

V

*Double Jeopardy*

Defendant contends that, although recidivist statutes are not normally prohibited by the double jeopardy clause, use of the prior conviction both to elevate the DUI to a felony and to serve as a strike should be viewed as a violation of that constitutional provision. To the contrary, there is no double jeopardy problem in the legislative scheme.

*White Eagle*, discussed in part I of the Discussion above, held that there was no double jeopardy problem with using a prior robbery conviction both to elevate the current petty theft crime to a felony and to serve as a strike. (*White Eagle, supra,* 48 Cal.App.4th at p. 1520.) Since there is no authority contradicting *White Eagle* on this issue, we need not consider it further.

DISPOSITION

The judgment is affirmed.

                                                              _____NICHOLSON_____, Acting P. J.

We concur:

_____MAURO_____, J.

_____MURRAY_____, J.

25