Filed 4/1/21  P. v. Romero CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>          v.<br><br>ANGELITO AMANCIO ROMERO,<br><br>    Defendant and Appellant. | F080588<br><br>(Super. Ct. No. F13905308)<br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  Gary D. Hoff, Judge.

Jerome P. Wallingford, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Hill, P.J., Levy, J. and Detjen, J.

Defendant Angelito Amancio Romero was convicted of second degree murder. Following an appeal in which we affirmed, defendant unsuccessfully petitioned for relief under Penal Code section 1170.95[1] based on the newly enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437). Appointed counsel for defendant asked this court to review the record to determine whether there are any arguable issues on appeal. (*People v. Wende* (1979) 25 Cal.3d 436.) Defendant was advised of his right to file a supplemental brief within 30 days of the date of filing of the opening brief. Defendant responded, contending (1) Senate Bill 1437 applies to him because his jury was instructed with CALCRIM No. 520 on natural and probable consequences; (2) implied malice was not proved at trial because the victim, Jennifer Starr—not defendant—was the actual "driver" of the vehicle as she grabbed the steering wheel and caused the accident that resulted in her death; (3) the trial court essentially directed the verdict because defendant was charged with second degree murder; and (4) the trial court should have instructed on the unforeseeability of Starr's death. Finding no arguable error that would result in a disposition more favorable to defendant, we affirm.

## BACKGROUND

"In 2013, defendant was driving under the influence on the highway, and his girlfriend[, Starr,] was sitting in the front passenger seat. Defendant was driving 80 miles an hour when his van crossed over the traffic lanes, crashed into a tree on the right shoulder, and went into a spin. [Starr] was thrown into the backseat; she died at the scene as a result of blunt force trauma. Defendant's blood-alcohol level was determined to be between 0.17 percent and 0.175 percent at the time of the fatal collision." (*People v. Romero* (Jun. 20, 2018, F073680) [nonpub. opn.] at p. 2 (*Romero*).)

On September 18, 2014, a first amended information charged defendant with "MURDER, in violation of … SECTION 187(a), a felony, … committed by

---

[1] All statutory references are to the Penal Code.

2.

Angelito Amancio Romero, who did unlawfully, and with malice aforethought murder Jennifer Mcelrath Starr." The information further alleged that defendant personally inflicted great bodily injury upon Starr in the commission of the crime (§ 1203.075).

"Prior to trial, the prosecution filed a trial brief/motion in limine stating that it was pursuing a second degree murder conviction under an implied malice theory pursuant to *People v. Watson* (1981) 30 Cal.3d 290 (*Watson*), based on defendant's prior DUI convictions, the murder admonishment he received in his 2008 prior conviction, and driving under the influence in this case.[2]

"The People's motion asserted that there were no lesser included offenses for the murder charge in this case. The People stated that gross vehicular manslaughter while intoxicated, and involuntary manslaughter, were not lesser included offenses of an implied malice second degree murder, as set forth in *People v. Sanchez* (2001) 24 Cal.4th 983 (*Sanchez*) and section 192, subdivision (b).

"At a pretrial hearing, the court said it had reviewed the People's motion and agreed that lesser included offenses were not applicable in this case. However, the court deferred any final ruling on the instructions until after the evidence had been introduced.

"The court asked defense counsel if he wanted to be heard. Defense counsel replied, 'No, I concur.' " (*Romero*, *supra*, F073680, at pp. 14–15, fn. omitted.)

At trial, defendant testified on his own behalf, explaining, in essence, that Starr had caused the accident. Defendant testified he "was going between 65 to 70 miles per hour in the far left 'fast' lane. [¶] … Starr again accused him of being involved with the other woman. Defendant denied it, Starr yelled at him, and they argued. Defendant claimed that Starr had been wearing her seatbelt, but she suddenly 'got off her seat' and

---

**2** A "*Watson* murder" is a second degree murder based on implied malice, committed when "the intoxicated killer drove while aware of the risk to life and consciously disregarded that risk …." (*People v. Doyle* (2013) 220 Cal.App.4th 1251, 1265.)

3.

grabbed the steering wheel.  Defendant did not know if Starr released her seatbelt before she grabbed the steering wheel.  Defendant lost control of the van and did not have time to react.  The van crossed over three lanes and crashed into the tree.

"Defendant testified that Starr was in the control of the van when it crossed over the lanes and crashed into the tree:  'I was not in control [of the van] at the time of the accident.'  Defendant admitted that he spoke to first responders while he was being treated at the scene of the crash.  He gave his name and birthdate, and identified Starr, but he did not tell anyone that Starr grabbed the steering wheel.  Defendant testified he did not mention this fact because he did not trust the police." (*Romero*, *supra*, F073680, at pp. 11–12.)

"After the parties rested, the court reviewed the proposed jury instructions.  The court stated the defense had requested CALCRIM No. 590 on gross vehicular manslaughter while intoxicated as a lesser included offense of murder.  The court asked defense counsel for argument on the matter.

" '[DEFENSE COUNSEL]:  I'll withdraw it, Judge.

" 'THE COURT:  All right.  Is that based on the Court's prior ruling on motions in limine and/or trial tactic decision?

" '[DEFENSE COUNSEL]:  Yes.' " (*Romero*, *supra*, F073680, at p. 15, fns. omitted.)

"The jury was instructed on second degree murder as the only theory of guilt.  The jury was not instructed on any lesser included offenses." (*Romero*, *supra*, F073680, at p. 15.)

On March 17, 2016, the jury found defendant guilty of second degree murder (§ 187, subd. (a)) and found true the allegation that he personally inflicted great bodily injury on Starr in the commission of the crime (§ 1203.075).

On April 20, 2016, the trial court sentenced defendant to 15 years to life in prison.

Defendant appealed, and on June 20, 2018, we affirmed the judgment. (*Romero*, *supra*, F073680.)

About six months later, on January 1, 2019, Senate Bill 1437 went into effect. It amended sections 188 and 189, narrowing the scope of culpability for murder, and added section 1170.95. (See Stats. 2018, ch. 1015, §§ 1–3.)

In 2019, defendant filed a petition for resentencing pursuant to the newly enacted section 1170.95.

On December 19, 2019, the trial court denied the petition, explaining that defendant failed to make a prima facie showing that he fell within the provisions of section 1170.95 because he was not convicted of felony murder or murder under a natural and probable consequences theory.

On January 6, 2020, defendant filed a notice of appeal.

## DISCUSSION

We first note that most of the issues raised by defendant needed to be raised in his appeal after trial; they are no longer timely. The only issue properly before us now is his appeal from the trial court's denial of his section 1170.95 petition.

### I.    Implied Malice Second Degree Murder and Senate Bill 1437

"Murder is the unlawful killing of a human being … with malice aforethought." (§ 187, subd. (a).) "[M]alice may be express or implied. [¶] … Malice is express when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature. [¶] … Malice is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (§ 188.) Stated another way, "[m]alice is implied when the killing is proximately caused by ' "an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life." ' [Citation.] In short, implied malice requires a defendant's awareness of engaging in conduct that endangers the life of

5.

another—no more, and no less." (*People v. Knoller* (2007) 41 Cal.4th 139, 143; see *People v. Taylor* (2004) 32 Cal.4th 863, 868.)  This is a subjective standard:  the defendant must have *actually appreciated* the risk involved.  (*Watson*, *supra*, 30 Cal.3d at p. 297.)

In 2018, the Legislature enacted Senate Bill 1437 after determining there was further "need for statutory changes to more equitably sentence offenders in accordance with their involvement in homicides." (Stats. 2018, ch. 1015, § l, subd. (b).)  Senate Bill 1437 changed murder liability under two theories—(1) the felony-murder rule and (2) the natural and probable consequences doctrine—through two statutory amendments. Only the latter is relevant here.

Before the enactment of Senate Bill 1437, "malice could be imputed to an *aider and abettor* under the natural and probable consequences doctrine." (*People v. Roldan* (2020) 56 Cal.App.5th 997, 1002 (*Roldan*), italics added.)  "When an accomplice aid[ed] and abet[ted] a crime, the accomplice [was] culpable for both that crime and any other offense committed that [was] the natural and probable consequence of the aided and abetted crime.  Natural and probable consequences liability [could] be imposed even if the accomplice did not intend the additional offense." (*People v. Gentile* (2020) 10 Cal.5th 830, 838 (*Gentile*).)  Thus, "an aider and abettor who lacked express malice but merely engaged in activity of which murder was a natural and probable consequence could have implied malice imputed to him or her, and could therefore be convicted of second degree murder." (*Roldan*, at p. 1002.)  Stated differently, "the natural and probable consequences doctrine rendered a defendant liable for murder if he or she aided and abetted the commission of a criminal act (a target offense), and a principal in the target offense committed murder (a nontarget offense) that, even if unintended, was a natural and probable consequence of the target offense." (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 248.)  "[T]o amend the natural and probable consequences doctrine, Senate Bill 1437 added section 188, subdivision (a)(3) … [, and now,] to be convicted of

murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.' " (*Gentile*, at pp. 842–843; § 188, subd. (a)(3), added by Stats. 2018, ch. 1015, § 2.)

Understandably, CALCRIM No. 520's reference to "natural and probable consequences" in the definition of implied malice[3] may be confused with the natural and probable consequences doctrine of aiding and abetting within the meaning of Senate Bill 1437 and section 1170.95. They are, however, "distinctly different concepts." (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1056–1057 (*Soto*), review granted Sept. 23, 2020, S263939.) Senate Bill 1437 "removed the natural and probable consequences doctrine as a basis for a murder conviction only insofar as it applied to *aider and abettor liability*." (*Roldan*, *supra*, 56 Cal.App.5th at p. 1004, italics added.) "Senate Bill No. 1437 changed the circumstances under which a person could be convicted of murder *without* a showing of malice, but it did *not* exclude from liability persons convicted of murder for acting with implied malice." (*Soto*, at p. 1057, italics added, fn. omitted.)

"For implied malice murder, [the requisite] intent is that the perpetrator ' "knows that his conduct endangers the life of another and … acts with conscious disregard for life." ' [Citation.] The 'physical component' required for implied malice murder 'is satisfied by the performance of "an act, the natural consequences of which are dangerous to life." ' [Citation.] [¶] The natural and probable consequence doctrine, by contrast, is a theory of liability by which an aider and abettor who intends to aid a less serious crime can be convicted of a greater crime. This doctrine comes into play when 'an accomplice

---

**3** CALCRIM No. 520 provides, in relevant part: "The defendant had implied malice if: [¶] 1. (He/She) intentionally (committed the act/[or] failed to act); [¶] 2. The *natural and probable consequences* of the (act/[or] failure to act) were dangerous to human life; [¶] 3. At the time (he/she) (acted/[or] failed to act), (he/she) knew (his/her) (act/[or] failure to act) was dangerous to human life; [¶] AND [¶] 4. (He/She) deliberately (acted/[or] failed to act) with conscious disregard for (human/[or] fetal) life." (Italics added.)

assists or encourages a confederate to commit one crime, and the confederate commits another, more serious crime (the nontarget offense).' [Citation.] Applying the natural and probable consequences doctrine, 'a defendant may be held criminally responsible as an accomplice not only for the crime he or she intended to aid and abet (the target crime), but also for any other crime that is the "natural and probable consequence" of the target crime.' [Citation.] Unlike aiding and abetting implied malice murder, which requires the aider and abettor to (at least) share the mental state of the actual perpetrator of implied malice murder, ' "aider and abettor culpability under the natural and probable consequences doctrine is not premised upon the intention of the aider and abettor to commit the nontarget offense [e.g., murder] because the nontarget offense was not intended at all." ' " (*Soto*, *supra*, 51 Cal.App.5th at p. 1058.)

Thus, Senate Bill 1437 eliminated the aider and abettor culpability under the natural and probable consequences doctrine. The theory of second degree implied malice murder, on the other hand, survived Senate Bill 1437. (*Soto*, *supra*, 51 Cal.App.5th at pp. 1057–1058.)

## II.     Procedure under Senate Bill 1437

As we noted, Senate Bill 1437 also added section 1170.95 to provide a postjudgment procedure by which a defendant "convicted of felony murder or murder under a natural and probable consequences theory" may petition the trial court to have the "murder conviction vacated and to be resentenced on any remaining counts." (§ 1170.95, subd. (a), added by Stats. 2018, ch. 1015, § 4.)

Once a section 1170.95 petition is filed, there follows a multi-step process by which the trial court first determines whether the petition is facially complete. "[T]he person must file a petition with the trial court that sentenced the petitioner declaring, among other things, that the petitioner 'could not be convicted of first or second degree murder because of changes to Section 188 or 189.' (§ 1170.95, subd. (a)(3); see § 1170.95, subd. (b)(1)(A).) Then, the trial court must 'review the petition and determine

if the petitioner has made a prima facie showing that the petitioner falls within the provisions of th[e] section.' (§ 1170.95, subd. (c).)" (*Gentile*, *supra*, 10 Cal.5th at p. 853.) To do so, the court must determine whether "(1) [a] complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[,] [¶] (2) [t]he petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[, and] [¶] (3) [t]he petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a); *id*., subd. (c).) If the court determines at this stage the petitioner is ineligible for relief as a matter of law, the petition is denied; if not, the court proceeds to the next step, in which "the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction and to resentence the petitioner on any remaining counts. (§ 1170.95, subds. (c), (d)(1).) At the hearing, the prosecution must 'prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' (§ 1170.95, subd. (d)(3).) 'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' " (*Gentile*, at p. 853.)

## III.   Analysis

In this case, the information charging defendant in 2014, in which he was the sole defendant, alleged that he committed the murder of Starr with malice aforethought, and personally inflicted great bodily injury upon her in the commission of the crime. The prosecution proceeded on a theory of implied malice second degree murder under *Watson*. The jury was instructed on implied malice murder, but not on felony murder or the natural and probable consequences doctrine as it relates to aiding and abetting liability for murder. The jury found defendant guilty as charged.

9.

In 2019, defendant filed, in propria persona, a section 1170.95 petition for resentencing alleging on a pre-printed form that (1) the information filed against him in 2014 allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) at trial, he was convicted of first or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine; (3) he could not now be convicted of first or second degree murder because of changes made to sections 188 and 189 pursuant to Senate Bill 1437; and (4) he was convicted of second degree murder under the natural and probable consequences doctrine and could not now be convicted of murder because of changes made to section 188.

The trial court did not err in denying defendant's section 1170.95 petition for resentencing. Defendant was not charged with or convicted of murder under the natural and probable consequences doctrine directed at accomplice liability. (See § 1170.95, subd. (a)(1), (2); *People v. Tarkington* (2020) 49 Cal.App.5th 892, 899, review granted Aug. 12, 2020, S263219 [the defendant was ineligible as a matter of law where the jury was not instructed on natural and probable consequences doctrine or felony-murder rule]; *People v. Edwards* (2020) 48 Cal.App.5th 666, 674, review granted July 8, 2020, S262481 [the defendant "*could not* meet the statutory prerequisites for even filing a section 1170.95 petition because he was not charged or convicted of second degree felony murder or murder under the natural or probable consequences doctrine directed at accomplice liability"]; *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1157 [the defendant did not make the requisite prima facie showing that he was convicted of murder under a natural and probable consequences theory].) Further, defendant could still be convicted of second degree murder under the law as changed by Senate Bill 1437. (See § 1170.95, subd. (a)(3).)

In sum, we have reviewed the record and find no arguable issues on appeal.

## DISPOSITION

We take judicial notice of the record and our prior opinion in *Romero*, *supra*, F073680. The order denying defendant's section 1170.95 petition for resentencing is affirmed.