WERDEGAR, J.,
Dissenting. — Because the majority, as I explain, unnecessarily overrules this court’s precedent in People v. Hofsheier (2006) 37 Cal.4th 1185 [39 Cal.Rptr.3d 821, 129 P.3d 29] (Hofsheier), I respectfully dissent.
Petitioner, convicted of oral copulation with a person under 16 years of age (Pen. Code, § 288a, subd. (b)(2)),* [1] claims he has been denied equal protection of the law because his oral copulation conviction subjects him to mandatory registration as a sex offender under section 290. Had he instead had sexual intercourse with the victim, petitioner contends, he would have committed a violation of section 261.5, subdivision (d) (unlawful sexual intercourse with person under 16 by person 21 or older), an offense not subject to mandatory registration under section 290. (See Hofsheier, supra, 37 Cal.4th at pp. 1192-1193 [finding an equal protection violation as to a defendant convicted of oral copulation with a 16 year old].)
We granted review to decide whether Hofsheier’s holding applies to defendant, who the record indicates was 27 years old at the time of his offense and thus potentially subject to prosecution under section 288, subdivision (c)(1), a mandatory registration offense, regardless of which sexual act he performed. We later asked the parties to brief the question of whether this court should overrule its decision in Hofsheier.
The majority decides Hofsheier should be overruled. I disagree.
As I will explain (see pt. II., post), Hofsheier’s holding rests on a sound equal protection analysis. Our registration law establishes a statutory discrimination between oral copulation and sexual intercourse, in which those who commit the former act with minors but without the use of force are uniformly subject to mandatory lifetime registration as sex offenders under section 290, while those who commit the latter act with minors but without the use of force are required to register only in the discretion of the trial court under section 290.006. This discrimination does not rest on a rational ground of legislative distinction but is an anachronistic holdover from a period (before 1975, when California laws on consensual adult sex acts were liberalized) when oral copulation and sodomy were regarded as abhorrent sexual perversions closely associated with homosexuality and were therefore outlawed regardless of the participants’ ages.
*891 Since 1975 the Legislature has, as the majority discusses, considered and rejected bills making unlawful sexual intercourse (§ 261.5) a mandatory registration offense under section 290 (maj. opn., ante, at p. 886). Of significance, however, is that the Legislature does not appear to have reconsidered its preliberalization comparative determination that all oral copulation with minors regardless of the circumstances requires lifetime registration, while sexual intercourse with minors requires registration only in the discretion of the sentencing court. Viewed in historical perspective, the statutory distinction in treatment between section 288a offenders and section 261.5 offenders does not rest on a “ ‘realistically conceivable’ ” legitimate purpose; to speculate on possible bases, as the majority does, is merely to “invent[] fictitious purposes that could not have been within the contemplation of the Legislature.” (Fein v. Permanente Medical Group (1985) 38 Cal.3d 137, 163 [211 Cal.Rptr. 368, 695 P.2d 665] (Fein).)
Clearly, a majority of the justices sitting on this case would not reach the same constitutional conclusion as did the court nine years ago in Hofsheier, supra, 37 Cal.4th 1185. But under the doctrine of stare decisis our precedent is nonetheless binding, absent extraordinary circumstances. Here we have no cause to depart from stare decisis and many reasons to adhere to our precedent. The majority posits no adequate grounds for overruling Hofsheier, a recent precedent that has engendered no widespread criticism or confusion, that has been relied on by those subject to registration under section 290, and that has afforded trial courts the flexibility to forgo ordering registration in circumstances where it would be unjust and counterproductive.
I. Stare Decisis
“It is, of course, a fundamental jurisprudential policy that prior applicable precedent usually must be followed even though the case, if considered anew, might be decided differently by the current justices. This policy, known as the doctrine of stare decisis, ‘is based on the assumption that certainty, predictability and stability in the law are the major objectives of the legal system; i.e., that parties should be able to regulate their conduct and enter into relationships with reasonable assurance of the governing rules of law.’ ” (Moradi-Shalal v. Fireman’s Fund Ins. Companies (1988) 46 Cal.3d 287, 296 [250 Cal.Rptr. 116, 758 P.2d 58] (Moradi-Shalal).) The doctrine is not applied rigidly, of course, and does not prevent a court from correcting its errors, especially when the prior decision’s errors relate to a matter of continuing concern. (Id. at pp. 296-297.) In particular, “reexamination of precedent may become necessary when subsequent developments indicate an earlier decision was unsound, or has become ripe for reconsideration.” (Id. at p. 297.)
In Moradi-Shalal, we concluded considerations of stare decisis did not warrant continuing to follow our then recent decision in Royal Globe Ins. *892 Co. v. Superior Court (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329], which had held certain private causes of action for unfair claims practices were authorized by provisions of the Insurance Code. Examining events following the decision in Royal Globe, we found that courts in 17 states had expressly or implicitly rejected its holding (Moradi-Shalal, supra, 46 Cal.3d at p. 297) and that a “disturbing” number of scholarly writers had criticized the decision (id. at p. 299), suggesting it had had “adverse social and economic consequences” (id. at p. 301). We further noted that “the lower courts have experienced considerable difficulty in attempting to define the scope of the Royal Globe cause of action” and that as a consequence “we have granted review in approximately 25 other cases raising a variety of Royal Globe issues and reaching a variety of conflicting conclusions.” (Moradi-Shalal, supra, 46 Cal.3d at p. 303; see Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn. (2013) 55 Cal.4th 1169, 1176-1178 [151 Cal.Rptr.3d 93, 291 P.3d 316] [detailing criticism by courts and commentators of decision to be overruled and difficulty of courts in applying the precedent]; Freeman & Mills, Inc. v. Belcher Oil Co. (1995) 11 Cal.4th 85, 98-102 [44 Cal.Rptr.2d 420, 900 P.2d 669] [describing extensive judicial and academic criticism of decision to be overruled].)
No similar circumstances pertain to our decision in Hofsheier, supra, 37 Cal.4th 1185. Since its release in 2006, Hofsheier has not been the subject of criticism from either judicial or academic sources. As discussed below, several California Court of Appeal decisions have distinguished Hofsheier and declined to apply it to new circumstances, but no decision by a federal or sister-state court has criticized it or declined to adopt its holding, and no law review article has addressed it critically. The direct commentary has been positive[2] or neutral.[3]
*893 Although some questions have arisen in applying Hofsheier’s holding, the majority exaggerates their significance, for none poses intractable logical dilemmas or threats to doctrinal coherence. After resolving a key procedural issue in People v. Picklesimer (2010) 48 Cal.4th 330 [106 Cal.Rptr.3d 239, 226 P.3d 348], we have found no decisional conflict or conundrum that called for our review until the instant case, for which we have granted and held four additional cases. (Cf. Freeman & Mills, Inc. v. Belcher Oil Co., supra, 11 Cal.4th at p. 97 [confusion generated by decision to be overruled is so great that resolving it would involve a “Herculean” effort].)
Nor is there any reason to suppose Hofsheier’s social effects have been adverse. (Cf. Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn., supra, 55 Cal.4th at p. 1177 [decision to be overruled tends to further fraudulent practices]; Freeman & Mills, Inc. v. Belcher Oil Co., supra, 11 Cal.4th at p. 102 [decision to be overruled creates potential for excessive tort damage awards]; Moradi-Shalal, supra, 46 Cal.3d at p. 301 [decision to be overruled tends to promote multiple litigation, inflate insurance settlements and raise insurance costs].) To the contrary, giving trial courts the discretion to forgo ordering registration for those convicted of oral copulation with 16 and 17 year olds appears to have social benefits, permitting prosecutors and courts to avoid unnecessarily imposing lifetime stigma and restricted liberty on nonpredatory offenders and giving greater equality of treatment to those with same-sex sexual partners. To overrule our decision in Hofsheier, supra, 37 Cal.4th 1185, without compelling grounds defeats the public expectation that the court will generally act, where possible within the law, to maintain or increase fairness and equality in the law.
Registration under section 290 carries with it not only the onerous lifetime registration requirements themselves, but also significant stigma and severe restrictions on residence choice. Hofsheier allows relief from these strictures for an offender who, from the circumstances of the offense and the personal history of the offender, the court in its discretion considers to be nonpredatory and at low risk of committing future sex offenses. Prosecutors and the courts may thus avoid stigmatizing and stunting the personal and economic lives of those nonpredatory offenders who engaged in oral sex within consensual intimate relationships with minors (both same sex and opposite sex) and have already served their sentences, in some cases many years ago.
*894 Under Hofsheier, supra, 37 Cal.4th 1185, for example, a man convicted decades ago at age 19 of oral sex with his 17-year-old girlfriend, now his wife, could seek relief from mandatory registration. (See California Supreme Court to Weigh Sex Offender Registration, S.F. Daily J. (Feb. 18, 2014) p. 1.) Under today’s decision overruling Hofsheier, he cannot. Under Hofsheier, a 23-year-old woman who had a month-long sexual relationship with a 15-year-old girl, and who the trial court said had learned from her mistake — noting that “I don’t believe we are ever going tp see you in a situation again where you are engaging in sexual relationships or relations with children” — would be able to seek relief from mandatory registration.[4] Under today’s decision, she cannot, but instead must continue to register as a sex offender for the rest of her life. Under Hofsheier, a man who, when he was 12 years old, called child protective services to report his own sexual conduct with his younger brother and later admitted a violation of section 288a, could seek relief from mandatory registration. (In re J.P (2009) 170 Cal.App.4th 1292 [89 Cal.Rptr.3d 17].) Under today’s decision, he cannot, and must register as a sex offender for the rest of his life, living with both the public stigma of being branded a sex offender and the severe residential restrictions California law places on those required to register. (See § 3003.5, subd. (b).)
Giving trial courts discretion to forgo ordering registration also tends to alleviate the overinclusiveness that has plagued California’s registration system. Unlike most states with sex offender registration, California requires lifetime registration for all qualifying offenders. Partly for this reason, we have the largest number of registrants in the nation- — -about 76,000 outside of prisons and jails. (Cal. Sex Offender Management Bd., A Better Path to Community Safety: Sex Offender Registration in California (2014) p. 3; Cal. Sex Offender Management Bd., Recommendations Report (Jan. 2010) p. 50.) Having so many offenders on the rolls makes it difficult for law enforcement to effectively supervise those who present the greatest public danger: “In this one-size-fits-all system of registration, law enforcement cannot concentrate its scarce resources on close supervision of the more dangerous offenders or on those who are at higher risk of committing another sex crime.” (Cal. Sex Offender Management Bd., Recommendations Report, supra, p. 50.) As the public board charged with evaluating and improving the state’s treatment of sex offenders in the community recently concluded, “California policy makers need to rethink the registration laws because society is actually better protected when attention is focused on those who truly present a risk while very low-risk sex offenders are permitted to develop stable lifestyles and move forward with their lives.” (A Better Path, supra, at p. 5, boldface omitted.) Though Hofsheier rested, of course, on constitutional rather than policy grounds, our holding improved the system by giving trial *895 courts discretion over registration of those convicted under section 288a. Today’s decision unnecessarily reverses that small step toward reform.
Overruling Hofsheier, supra, 37 Cal.4th 1185, also creates potentially substantial risks to individuals who have relied on our decision and will no doubt engender new litigation to settle questions of its application. In the nine years since Hofsheier was filed, an unknown number of offenders convicted of violating section 288a have been released into society without orders to register as sex offenders, or have been relieved of their prior registration obligations through writ proceedings. The possible consequences for them of Hofsheier’s overruling are unclear. What will be their potential liability for failure to comply with the law’s strict time-limited registration requirements in the interim? (See §§ 290.012, 290.013 [setting short deadlines for registration annually and upon change of residence].)
In their briefing, the People acknowledge that some form of notice will be necessary before a person who, after Hofsheier, was not required to register or who successfully petitioned for relief from mandatory registration could be convicted of the willful failure to register. (§ 290.018, subds. (a), (b).) Left unanswered is whether the California Department of Justice, which administers the registration system, has the means to identify such new or renewed registrants or to reach all those persons who are identified with adequate notice. Also unclear is what form of notice will suffice to allow prosecution for willful failure to register. In People v. Garcia (2001) 25 Cal.4th 744, 752-754 [107 Cal.Rptr.2d 355, 23 P.3d 590], we held a conviction for that offense requires proof of actual knowledge of the registration requirement. Presumably, then, the Department of Justice will attempt to obtain some form of acknowledgement from recipients that they have received and read the notice of Hofsheier’s overruling. (See Garcia, supra, at p. 755 [failure to instruct jury on knowledge requirement harmless where jury necessarily found the defendant, on release from incarceration, read and signed form telling him of registration requirements].) To the extent the notice even reaches unincarcerated nonregistrants, however, many are likely to refrain from signing and returning it, leaving unclear their criminal liability under section 290.018, subdivision (a) or (b). (See § 290.018, subd. (j) [punishing as a misdemeanor, without any express requirement of willfulness, “the failure to provide information required on registration and reregistration forms of the Department of Justice”].)
Uncertainty also surrounds the consequences of today’s decision on allowable residences for those now required to register. If such an offender has acquired or returned to a residence that is unlawful for persons required to register (see § 3003.5, subd. (b)), will the offender have to immediately move out, and will he or she be liable for a violation of section 3003.5 for any time *896 spent in a prohibited residence? Section 3003.5 does not by its terms require willfulness or knowledge of the residency limitations or of one’s registration requirement; with Hofsheier overruled, therefore, section 288a offenders who, since that decision, have acquired or returned to a noncompliant residence may face criminal liability regardless of their lack of notice or knowledge. And criminal liability aside, they could face significant economic and personal hardship in having to uproot themselves and their families to seek compliant housing.
As the majority seemingly acknowledges, defendants may also have relied on Hofsheier by agreeing, in plea negotiations, to plead to offenses that do not carry mandatory registration under that decision or its progeny. (Maj. opn., ante, at pp. 888-889.) The majority leaves open whether and how such defendants may obtain relief, either from the newly imposed registration requirement or from their convictions. In this respect as well, today’s decision is likely to be a fertile source of doubt and litigation.
In an area of the law where the application of burdensome lifetime restrictions on liberty, enforceable by additional criminal sanctions (§290.018), depends on our decisions, stability would seem of the highest importance. In this area of law, we should not overrule our precedents without the most compelling cause. No such cause is present here.
II. The Merits o/Hofsheier’s Holding
Section 290 requires persons convicted of specified sex offenses to register with law enforcement agencies as sex offenders periodically and for the rest of their lives. Persons convicted of nonspecified crimes may also be required to register, in the discretion of the trial court, on findings that the offense was committed out of sexual compulsion or for sexual gratification and that the circumstances weigh in favor of ordering registration. (§ 290.006; Hofsheier, supra, 37 Cal.4th at p. 1197.) As relevant here, subdivision (c) of section 290 lists as offenses requiring mandatory registration all violations of section 288a (unlawful oral copulation), but not violations of section 261.5 (unlawful sexual intercourse with minor).
In Hofsheier, the defendant had engaged in voluntary oral copulation[5] with a 16-year-old girl. Convicted by plea of violating section 288a, subdivision (b)(1), he was granted probation and ordered to register as a sex offender. (Hofsheier, supra, 37 Cal.4th at p. 1193.) On appeal, the defendant claimed *897 the unequal treatment of oral copulation and sexual intercourse violated his constitutional rights. (Id. at p. 1194.) As we explained, “[i]f defendant here, a 22-year-old man, had engaged in voluntary sexual intercourse with a 16-year-old girl, instead of oral copulation, he would have been guilty of violating section 261.5, subdivision (c), but he would not face mandatory sex offender registration.” (Id. at p. 1195.)
To assess Hofsheier’s equal protection claim, we first asked whether he was similarly situated to a class of people the Legislature has not subjected to mandatory registration, those convicted of unlawful sexual intercourse under section 261.5. (Hofsheier, supra, 37 Cal.4th at p. 1199.) Although his conviction was for unlawful oral copulation, we held that the likeness of the sexual acts situated the defendant similarly to a person who committed unlawful sexual intercourse. “The only difference” between the defendant’s offense, which required registration, and unlawful sexual intercourse, which did not, was “the nature of the sexual act.” (Id. at p. 1200.) As the majority opinion leaves this aspect of Hofsheier undisturbed (maj. opn., ante, at p. 882), I also do not dwell on it here.
In the second part of our analysis in Hofsheier, we evaluated possible grounds for the Legislature’s distinction, as to sex offender registration, between the offenses of voluntary oral copulation with a minor and unlawful sexual intercourse with a minor the same age. Finding no rational basis for the difference in treatment, we held section 290’s registration mandate unconstitutional as to those convicted, under section 288a, subdivision (b)(1), of voluntary oral copulation with minors 16 to 17 years old. (Hofsheier, supra, 37 Cal.4th at pp. 1201-1207.) Because the defendant remained subject to discretionary registration, we remanded for a determination by the trial court on that issue. (Id. at pp. 1208-1209.)
Recognizing the Legislature’s broad discretion in forming criminal justice policy, this court generally has applied a deferential rational relationship test — whether the challenged classification bears a rational relationship to a legitimate state purpose — to statutory distinctions in the consequences of different offenses. (People v. Turnage (2012) 55 Cal.4th 62, 74 [144 Cal.Rptr.3d 489, 281 P.3d 464]; People v. Wilkinson (2004) 33 Cal.4th 821, 837-838 [16 Cal.Rptr.3d 420, 94 P.3d 551].) We adhered to that approach in Hofsheier, framing the issue as “whether there is a rational basis for the statutory classification requiring lifetime registration as a sex offender by a person, such as defendant, convicted of voluntary oral copulation with a 16-year-old girl but not of a person convicted of voluntary sexual intercourse with a minor of that age.” (Hofsheier, supra, 37 Cal.4th at p. 1201.)
Elucidating the scrutiny involved, we repeated (Hofsheier, supra, 37 Cal.4th at pp. 1200-1201) the oft-quoted formula that legislation subject to rational *898 basis scrutiny “must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.” (FCC. v. Beach Communications, Inc. (1993) 508 U.S. 307, 313 [124 L.Ed.2d 211, 113 S.Ct. 2096]; see Kasler v. Lockyer (2000) 23 Cal.4th 472, 482 [97 Cal.Rptr.2d 334, 2 P.3d 581]; Warden v. State Bar (1999) 21 Cal.4th 628, 644 [88 Cal.Rptr.2d 283, 982 P.2d 154].) At the same time, we highlighted the respects in which rational basis review, deferential as it is, nevertheless requires real scrutiny of the relationship between a classification and the possible legislative goals. We have described the necessary inquiry into that relationship as a serious and genuine one, in which the court seeks plausible reasons for the classification, resting on a reasonably conceivable factual basis. (Hofsheier, supra, 37 Cal.4th at p. 1201; see Warden v. State Bar, supra, at pp. 647-648.) The statutory purpose by which the classification is justified must be realistically conceivable — the reviewing court does not “ ‘ “inventQ fictitious purposes that could not have been within the contemplation of the Legislature.” ’ ” (Hofsheier, supra, at p. 1201.) And while the Legislature may rationally address a problem “ ‘in less than comprehensive fashion by “striking the evil where it is felt most” [citation], its decision as to where to “strike” must have a rational basis in light of the legislative objectives.’ ” (Id. at p. 1206, fn. 8, quoting Hays v. Wood (1979) 25 Cal.3d 772, 791 [160 Cal.Rptr. 102, 603 P.2d 19].)
The sex offender registration scheme is intended to ensure that such offenders, considered likely to recommit sex offenses, are available for police surveillance and, in the scheme’s modem form, “to notify members of the public of the existence and location of sex offenders so they can take protective measures.” (Hofsheier, supra, 37 Cal.4th at p. 1196.) In briefing Hofsheier, the People asserted two possible grounds for section 290’s distinction between adults convicted of voluntary oral copulation with 16-or 17-year-old minors, who are subject to mandatory registration, and adults convicted of voluntary sexual intercourse with minors of that age, who are not subject to mandatory registration. First, the People argued the distinction could rest on a legislative belief that the former class (those convicted under § 288a) are more likely to repeat their offenses than the latter (those convicted under § 261.5). (Hofsheier, supra, at p. 1203.) Second, the People asserted the legislative distinction could be justified by the possibility of pregnancy resulting from sexual intercourse, “because requiring the father to register as a sex criminal might stigmatize both the mother and the child, and might harm the father’s ability to support his child.” (Id. at p. 1205.) These are the same rationales posited by the majority today. (Maj. opn., ante, at pp. 883-886.)
Hofsheier’s emphasis on a realistic assessment of the possible legislative purposes carried forward to its discussion, under the rational relationship standard, of these asserted bases. The court observed that the individual *899 variation in the risk of recidivism and the possibility of pregnancy were rational grounds for providing judicial discretion in registration generally, but not for providing such discretion selectively only as to those convicted under section 261.5, since persons convicted under section 288a also varied in their risk of recidivism and also may have had sexual intercourse with the victim, the two sex acts not being exclusive of one another. (Hofsheier, supra, 37 Cal.4th at pp. 1204-1205.) More fundamentally, the Hofsheier court found the People’s asserted grounds for the statutory distinction to be “at odds” with the history and structure of California’s sex crimes laws. (Id. at p. 1206.) Viewed realistically in light of those laws’ historical development, section 290’s unfavorable treatment of oral copulation in comparison to sexual intercourse appears not as a rational distinction based on currently operative legislative views of the two offender classes, but rather “a historical atavism dating back to a law repealed over 30 years ago that treated all oral copulation as criminal regardless of age or consent.” (Hofsheier, supra, at p. 1206.)
To understand Hofsheier’s reasoning on this point, and the limits that reasoning places on the decision’s application, it helps to review the history referred to in more detail.
Our sex offender registration statute (§ 290) dates from 1947; then as now, the statute listed oral copulation (§ 288a) and sodomy (§ 286), but not sexual intercourse with a minor (then punished under § 261, former subd. 1), as registerable offenses. (Stats. 1947, ch. 1124, § 1, p. 2562.) Section 288a, however, was then a very different statute than it is now. Bearing the notation “Sex perversions,” the enactment punished as a felony all oral copulation, even that occurring between consenting adults. (Stats. 1921, ch. 848, § 2, p. 1633.) Similarly, California’s sodomy statute (former § 286), which dates to the 1872 Penal Code, punished anal sex as a felony, even between consenting adults. (See Stats. 1921, ch. 90, § 1, p. 87 [referring to the offense as “the infamous crime against nature”].) California was not exceptional in prohibiting acts of nonprocreative sex; writing in 1950, a legislative subcommittee studying sex crimes summarized American law: “The law approves and recognizes only one method of sexual intercourse [¶] That method is the relationship between the sex organ of a man and the sex organ of a woman. Other practices of sexual gratification such as connections per anum or per os (mouth) are forbidden.” (Assem. Interim Com. on Judicial System & Judicial Process, Preliminary Rep. of Subcom. on Sex Crimes (Mar. 8, 1950) Assem. J. (1950 1st Ex. Sess.) pp. 29, 45.)
The version of section 288a added in 1921 replaced a previous version enacted in 1915 (also to address “sex perversions”), which criminalized “[t]he acts technically known as fellatio and cunnilingus.” (Stats. 1915, ch. 586, § 1, *900 p. 1022; see In re Lockett (1919) 179 Cal. 581, 583-591 [178 P. 134] [holding this statute unconstitutional because the offense was defined by Latin terms having no definite meaning in the English language].) The 1915 law’s enactment appears to have been spurred by a scandal involving arrests of homosexuals in Los Angeles and Long Beach. (See Scott, Lust, Language, and Legislation: Long Beach, California 1914 (2010) 19 Ex Post Facto 93, 99-101.) In December of 1914, the Sacramento Bee published a series of articles lamenting the lack of an adequate criminal sanction for this “Vilest of All Offenses,” a “debasing immorality, of practices between man and man, and man and boy” revealed by the Southern California scandals. (Campbell, Legislature Should Enact Some Law to Punish This Most Debasing Practice, Sacramento Bee (Dec. 21, 1914) p. 1; see Campbell, Wide Spread of Debasing Practices Make Punitive Legislation a Necessity, Sacramento Bee (Dec. 22, 1914) p. 1; Campbell, Bee’s Publicity Light on Great Vice of Day Shows Need of Punitive Measures, Sacramento Bee (Dec. 24, 1914) p. 1.) The bill to make oral copulation a felony (Assem. Bill No. 219 (1915 Reg. Sess.)) was introduced on January 14, 1915, passed by both houses and signed by the Governor on June 1 of that year. The Bee promptly took credit for uncovering the “ ‘Sexual Perversions’ ” that the law was designed to suppress. (Scott, Lust, Language, and Legislation: Long Beach, California 1914, supra, 19 Ex Post Facto at p. 101, fn. 43.)
Sections 288a and 286 did not differentiate between adults of the same sex and those of opposite sexes in prohibiting the specified voluntary sex acts. The statutes, however, were enforced largely against homosexual acts. “One reason given for this significant disparity in enforcement is that deviant heterosexual conduct is not viewed with the same distaste as is homosexual conduct by the public.” (Comment, Sexual Freedom for Consenting Adults— Why Not? (1971) 2 Pac. L.J. 206, 214, fn. 49.) Enforcement of the oral copulation and sodomy laws being nearly impossible as to voluntary acts between adults committed in private “[u]nless the parties are extremely careless” (id., at p. 214), enforcement against consenting adults occurred mainly through surveillance in public places, notably bars, bathhouses and public restrooms frequented by homosexuals. (Ibid.; see Gallo et al., Project, The Consenting Adult Homosexual and the Law: An Empirical Study of Enforcement and Administration in Los Angeles County (1966) 13 UCLA L.Rev. 643, 689 (hereafter The Consenting Adult Homosexual).) Thus it could be said, in the era before liberalization of the laws regarding consenting adults, that “the meaning of deviant sexual conduct in society is synonymous to homosexual conduct.” (Comment, .Sexual Freedom for Consenting Adults — Why Not?, supra, 2 Pac. L.J. at p. 214.)
The use of sections 288a and 286 to punish “deviant” sex acts between consenting adults thus “sen[t] a clear message: vaginal intercourse is the only morally acceptable form of penetrative sexual behavior. . . . Deeply intimate *901 sexual acts are only available to straight people. Those straight people who engage in ‘normal’ sex can meet our moral strictures, as embodied in our laws, but homosexuals never can.” (Strader, Lawrence’s Criminal Law, supra, 16 Berkeley J.Crim.L. at p. 77.) Certainly, some members of the California judiciary understood the laws this way: a Court of Appeal panel, rejecting constitutional challenges to section 288a, observed the defendant’s arguments were those of “the congenital homosexual to whom that is natural which the vast majority of the population deems unnatural.” (People v. Baldwin (1974) 37 Cal.App.3d 385, 395 [112 Cal.Rptr. 290].)
The requirement for registration as a sex offender played a significant role in enforcement of sections 288a and 286 against gay people. The 1966 UCLA Law Review study of enforcement practices found that police officers, when they had a choice of statutes under which to arrest gay men, consciously chose those offenses requiring registration, including sections 288a and 286, the “predominant view” being that “homosexual offenders should be registered.” (The Consenting Adult Homosexual, supra, 13 UCLAL.Rev. at p. 737.) In interviews, officials gave various reasons for wanting to register homosexuals, including the beliefs that they were prone to commit forcible sex offenses or offenses against children and that requiring registration would discourage homosexual conduct. (Id., at pp. 737-738.)
The 1975 bill amending sections 288a and 286 to eliminate criminal penalties for the specified acts between consenting adults (Assem. Bill No. 489 (1975-1976 Reg. Sess.)) was understood by the public, the bill’s supporters and its opponents as an act to legalize homosexual conduct. The bill was informally dubbed the “homosexuals’ bill of rights.” (Gillam, Assembly OK’s Homosexuals’ Bill of Rights, L.A. Times (Mar. 7, 1975) p. A1.) Members of the Assembly spoke in favor of the bill on the grounds both that it would prevent unnecessary government interference with sexual privacy generally and “end the harassment of homosexuals,” and against it on the ground that “oral copulation and sodomy are unnatural acts” and the bill would thus “sanction unnatural relationships.” (Assembly Passes Bill to Decriminalize Sex Acts, L.A. Daily J. (Mar. 10, 1975) p. 3.) Outside opponents warned that under the bill “[h]omosexual activities and orgies in homes or apartments next to yours would be completely legal.” (Woman’s Christian Temperance Union of Southern Cal., analysis of Assem. Bill No. 489 (Apr. 1975) p. 2.) Supporters, while observing that the practices to be legalized were not limited to homosexuals, applauded the bill for removing that group’s “ ‘outlaw’ status” and as providing recognition that love and *902 tolerance for our “homosexual neighbor[s]” is the legal position most consistent with contemporary Christian belief. (National Organization for Women, Los Angeles Chapter, letter to Senators (Mar. 27, 1975) p. 3.)[6]
In contrast to the criminalization of oral sex and sodomy as perversions associated with homosexuality, heterosexual intercourse with pubescent minors, even when it violates the law, has often been viewed as proceeding from morally and psychologically normal impulses. In part, this reflects the mainstream commonality of adolescent heterosexual experience. “Historically devised to protect the innocence of youth, statutory rape laws continue in force today, even though most Americans admit to having their first sexual experience as teenagers . . . .” (Carpenter, The Constitutionality of Strict Liability in Sex Offender Registration Laws (2006) 86 B.U. L.Rev. 295, 309, fn. omitted.) Heterosexual intercourse with pubescent minors generally has not carried the labels of “unnatural,” “depraved” and “perverted” applied to the sexual acts historically associated with homosexuality.
Indeed, as the majority notes (maj. opn., ante, at p. 885), when the prohibition on sexual intercourse with underage girls was removed from California’s rape statute (§ 261) and designated as the new offense of “unlawful sexual intercourse” (§ 261.5), the principal goal was to eliminate the social stigma of labeling offenders “rapists.” While one bill analysis ties this goal specifically to enabling offenders to support a child conceived by the offense (Bradford, State Bar of Cal., analysis of Sen. Bill No. 497 (1970 Reg. Sess.) undated, p. 1 [analysis by State Bar’s legislative representative, submitted to Assem. Com. on Criminal Procedure]), other legislative history refers more generally to “eliminat[ing] the social stigma attached to the term rapist” (Sen. Com. on Judiciary, Bill Analysis Work Sheet for Sen. Bill No. 497 (1970 Reg. Sess.)) and helping offenders obtain employment by “eliminating] the social stigma which arises when the distinction between forcible rape and intercourse with a consenting female minor is not made” (Sen. Beilenson, sponsor of Sen. Bill No. 497 (1970 Reg. Sess.), letter to Governor, Aug. 26, 1970).
What is clear is that even in 1970, when all oral copulation was still banned as a sexual perversion, sexual intercourse with a minor was deemed unworthy of social stigma. The difference in attitude towards oral copulation and sexual intercourse reflected in section 290’s differential registration requirement is thus a continuation of historical attitudes: while sexual intercourse with minors was an offense, the act itself was a normal one not *903 considered deserving of any social stigma; oral copulation, in contrast, was an unnatural act typically engaged in by homosexuals.
More recently, the decriminalization of adult consensual sex acts and the enactment of section 261.5, relating to adult sexual intercourse with a minor, have led to greater consistency in our statutes on voluntary sex acts with minors. For example, each of the principal statutes now provides greater punishment for nonforcible acts with younger minors and for when there is a greater age gap between the participants. (See §§ 261.5, subds. (b), (c), (d), 286, subds. (b)(1), (2), (c)(1), 288a, subds. (b)(1), (2), (c)(1).)
One significant difference in treatment nonetheless persists from the period before liberalization: those convicted of violating sections 288a and 286 are automatically required by section 290 to register as sex offenders for their entire lives; those convicted of violating section 261.5 are not. Although the premise that acts outlawed in sections 288a and 286 are unnatural perversions has been discarded, fatally undermining the former “predominant view . . . that homosexual offenders should be registered” (The Consenting Adult Homosexual, supra, 13 UCLA L.Rev. at p. 737), the mandatory registration requirement applicable to these particular sex acts remains on the books, a vestige of bygone social and legal discrimination. It is in this sense that we have termed the distinction drawn in section 290 between unlawful sexual intercourse and oral copulation “a historical atavism.” (Hofsheier, supra, 37 Cal.4th at p. 1206.)
Even under deferential rational basis review, justifications for legal discrimination “must find some footing in the realities of the subject addressed by the legislation.” (Heller v. Doe (1993) 509 U.S. 312, 321 [125 L.Ed.2d 257, 113 S.Ct. 2637]; accord, People v. Turnage, supra, 55 Cal.4th at p. 75 [recognizing that “the realities of the subject matter cannot be completely ignored” under rational basis review].) The statutory distinction must be rationally related to a “ ‘realistically conceivable’ ” legislative purpose; the court is not to “invent[] fictitious purposes that could not have been within the contemplation of the Legislature.” (Fein, supra, 38 Cal.3d at p. 163; accord, Warden v. State Bar, supra, 21 Cal.4th at p. 648.) In rejecting the People’s recidivism and pregnancy rationales for differentiating between sections 261.5 and 288a, the Hofsheier court did no more than analyze section 290’s distinction in mandatory registration in light of the historical realities of California sex crime law and decline to invent purposes that, from the historical record, the Legislature could not have contemplated. (Fein, supra, at p. 163; see People v. Sage (1980) 26 Cal.3d 498, 507-508 [165 Cal.Rptr. 280, 611 P.2d 874] [as proposed grounds for distinction in presentence conduct credits apply equally to both classes compared, the distinction “was not based on the grounds proposed” and fails rational basis test]; Brown v. Merlo (1973) *904 8 Cal.3d 855, 865, fn. 7 [106 Cal.Rptr. 388, 506 P.2d 212] [“Although by straining our imagination we could possibly derive a theoretically ‘conceivable,’ but totally unrealistic, state purpose that might support this classification scheme, we do not believe our constitutional adjudicatory function should be governed by such a highly fictitional approach to statutory purpose.”].)
Careful attention to whether a posited reason is plausible and realistic is particularly appropriate here given that our registration law’s differential treatment of oral copulation and sexual intercourse has origins in irrational homophobia, continues to impact gay people in a differentially harsh way (as those in a same-sex relationship cannot plead to the discretionary registration offense of unlawful sexual intercourse) and involves severe restrictions on liberty and privacy. (See People v. Barrett (2012) 54 Cal.4th 1081, 1148 [144 Cal.Rptr.3d 661, 281 P.3d 753] (conc. & dis. opn. of Liu, J.) [statutory discrimination may rest on irrational prejudice, and demand less-superficial scrutiny despite lack of present animus, where legislation “arise[s] from good faith adherence to unexamined assumptions that reflect historic or prevailing attitudes”]; cf. Hunter v. Underwood (1985) 471 U.S. 222, 233 [85 L.Ed.2d 222, 105 S.Ct. 1916] [Ala. law disenfranchising certain ex-convicts is racially discriminatory, regardless of any modern justification that could be posed, where “its original enactment was motivated by a desire to discriminate against blacks on account of race and the section continues to this day to have that effect.”].) We should hesitate to approve a statutory discrimination that may still bear the taint of irrational prejudice against homosexuals. (See In re Marriage Cases (2008) 43 Cal.4th 757, 841 [76 Cal.Rptr.3d 683, 183 P.3d 384] [additional scrutiny of classification warranted in part by history of hostility and stigma experienced by homosexuals as a group].)
With the shift in attitudes toward oral sex and homosexuality represented by the 1975 decriminalization of consensual adult conduct, a reevaluation of section 288a’s listing in section 290 would have been appropriate, i.e., should all those convicted of oral sex with minors still be required to register, when those convicted of sexual intercourse with minors the same age are not required to do so? As far as revealed in Hofsheier or discovered in my research in this case, however, no such reevaluation occurred. Instead, the blanket registration requirement for section 288a offenders lay undisturbed in section 290, a relic of past homophobia and discarded ideas of sexual regulation. Hofsheier correctly held this does not constitute a rational basis for the statutory discrimination against section 288a offenders.
As rational bases for the statutory discrimination at issue, the majority posits the possibility oral copulation offenders are viewed as more likely to repeat their offenses than unlawful intercourse offenders and, particularly, the *905 potential for pregnancy resulting from sexual intercourse but not from oral copulation. (Maj. opn., ante, at pp. 884-886.)
With regard to differential recidivism, the legislative view appears to be at odds with that postulated by the majority. In statutory findings quoted by the majority, the Legislature found that many men committing unlawful sexual intercourse with minors are “ ‘repeat offenders’ ” who “ ‘prey upon minor girls.’ ” (Maj. opn., ante, at p. 885, quoting Stats. 1996, ch. 789, § 2, p. 4161.) Thus, contrary to the majority’s supposition, the Legislature does not appear to rely on a low risk of recidivism to exempt section 261.5 offenders from mandatory registration. Rather, as shown above, the historical record shows oral copulation was disfavored in comparison with sexual intercourse because the former act was regarded as a perversion engaged in by homosexuals. The majority’s hypothesis is a “fictitious purpose[]” (Fein, supra, 38 Cal.3d at p. 163) at odds with the history of our sex crimes statutes.
The majority’s claim that the Legislature omitted section 261.5 from the list of mandatory registration offenses out of concern for the well-being of children conceived through unlawful sexual intercourse with minors finds some support in the staff analysis of a 1997 bill proposing to add section 261.5 to the mandatory list. The analysis outlines, in a set of rhetorical questions, several reasons for maintaining judicial discretion in ordering registration, one of which relates to concern over parental support for children of unlawful intercourse: “How many persons convicted of statutory rape are recidivists? [¶] Will more cases go to trial instead of settled if a registration requirement is mandated? [¶] Out of all the statutory rapes that occur, how many victims would report the sex as nonconsensual? [¶] How many teen[] mothers would want the father of their child to plead guilty of statutory rape and be subject to a life time registration requirement?” (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1303 (1997-1998 Reg. Sess.) as amended Apr. 16, 1997, p. 4, some capitalization omitted.) Though the considerations outlined are broader than a concern over parental support (whether economic or otherwise), that is certainly included.
Of greater importance for our purposes is that the 1997 bill to which this analysis relates merely proposed to list section 261.5 in section 290; it did not address the treatment of section 288a offenders. The cited history helps to explain why the Legislature has not subjected all section 261.5 offenders to mandatory registration, but it does not support the claim that the same considerations require a different treatment of all section 288a offenders as predators deserving of mandatory lifetime registration. Indeed, most of the bill analysis’s reasons for allowing discretion in sex offender registration apply equally to those committing nonforcible oral copulation with a minor: such prohibited acts sometimes occur voluntarily within mutual intimate *906 relationships, a context that does not pose a high risk of recidivism, and allowing discretion in such cases would make defendants and prosecutors more likely to reach plea agreements in appropriate cases. The bill analysis, discussing a proposal affecting only section 261.5 offenders, does not reflect a comparative determination that such offenders are less deserving of mandatory registration than those convicted of violating section 288a.
Historically, again, oral copulation was legally disfavored compared to intercourse with minors not because it allowed no possibility of pregnancy — a fact that would seem, if anything, comparatively to mitigate the crime — but because it was regarded as unnatural and perverted and was associated with homosexuals. To treat the distinction in section 290 as reflecting a contemporary judgment about the need to register those who engage in oral copulation with minors, but not those who engage in sexual intercourse, would be to indulge in the kind of “highly fictitional” justification we abjured in Brown v. Merlo, supra, 8 Cal.3d at page 865, footnote 7.
The Legislature has never made an affirmative decision to impose mandatory registration differentially on those convicted of voluntary oral sex with minors. From the registration scheme’s beginning, registration has been mandatory for all those convicted of “sex perversions” under section 288a, regardless of the participants’ ages or the voluntary nature of the act, in accord with the belief that “homosexual offenders should be registered.” (The Consenting Adult Homosexual, supra, 13 UCLA L.Rev. at p. 737). Realistically assessed, the postliberalization distinction as to acts with minors is not the product of a legislative judgment aimed at acts with minors specifically, but a remnant of the blanket disapproval of oral copulation prevailing before decriminalization.
The majority argues Hofsheier, supra, 37 Cal.4th 1185, presented the Legislature with a “Hobson’s choice” in that the only way mandatory registration could be maintained for oral copulation, under our decision, would be by requiring mandatory registration for unlawful sexual intercourse as well, which the Legislature has reasons for declining to do. (Maj. opn., ante, at p. 880.) Not so. If the Legislature continues to believe all section 288a offenders are so dangerous as to require mandatory lifetime registration as sex offenders, it can reenact section 290 with findings to that effect. Such findings would directly rebut Hofsheier’s conclusion the listing of section 288a but not section 261.5 as a mandatory registration offense is an anachronistic holdover from the preliberalization period.[7]
*907 The majority complains that lower courts have extended Hofsheier beyond the particular set of offenses it addressed, thus “denying significant effect to section 290.” (Maj. opn., ante, at p. 878.) The majority omits to mention the numerous appellate decisions rejecting equal protection claims based on Hofsheier, either because the two classes of offenders were not deemed similarly situated or because the court discerned rational grounds for the legislative distinction in treatment.* ******[8] When Hofsheier is understood as resting crucially on the history of section 288a, moreover, its potential application to other statutes is quite limited. For a high court’s constitutional decision to affect some additional cases is hardly unusual and provides no grounds for overruling it; the effect in this instance has been well short of a revolution in equal protection law.
III. Conclusion
Our decision in Hofsheier, supra, 37 Cal.4th 1185, was a relatively narrow one, applying well-established equal protection principles to the particular history and structure of sections 261.5, 288a, and 290. We concluded the differential requirement of mandatory sex offender registration for those convicted of oral copulation with a 16 or 17 year old, but not for those convicted of unlawful sexual intercourse with a minor the same age, was a historical atavism without rational relation to a legitimate state purpose. In the discussion above, I have revisited the rationale for that conclusion, *908 explaining in greater detail the specific statutory history on which it rests and, in the process, clarifying its limitations. I have further considered events since Hofsheier's decision, finding no widespread confusion or difficulty of application, no criticism (but some praise) of our decision from the legal academy or the courts of other jurisdictions, and social effects that appear beneficial rather than adverse. As there are no compelling grounds for concluding Hofsheier is both wrong and mischievous, we should not overrule it.
In requiring that section 288a offenders be treated the same as section 261.5 offenders with regard to sex offender registration, Hofsheier mitigated the discriminatory effects of our registration scheme as it had survived since preliberalization days. Because section 261.5 is omitted from the list of mandatory registration offenses in section 290, the prosecutor in a case involving a perpetrator’s sexual relationship with a minor of the opposite sex commonly can choose to allow judicial discretion in registration by charging only a violation of section 261.5 or by accepting a negotiated plea to that offense alone when the circumstances of the case do not indicate predatory behavior or other grounds for fearing repetition. Before our decision in Hofsheier, no comparable option existed for a case involving a relationship with a minor of the same sex. Now, by overruling Hofsheier, the majority reinstitutes a scheme that had a disproportionately adverse effect on gay and lesbian youth and unnecessarily saddled nonpredatory offenders of either sexual orientation with the stigma and restricted liberties attendant on sex offender registration.
Adherence to stare decisis is not a rigid command, but in this instance it is the wiser course; Hofsheier should not be overruled. For these reasons, I respectfully dissent.
Liu, J., concurred.
Appellant’s petition for a rehearing was denied April 22, 2015. Werdegar, J., Liu, J., and Cuéllar, J., were of the opinion that the petition should be granted.

 All further unspecified statutory references are to the Penal Code.

 See Strader, Lawrence’s Criminal Law (2011) 16 Berkeley J.Crim.L. 41, 92-93 and footnote 285 (Hofsheier is analogous to State v. Limon (2005) 280 Kan. 275 [122 P.3d 22], which correctly held (in the article’s words) that “maintaining heterosexuálity as the governing norm is not a rational basis for discrimination”); Comment, The Present Case Does Involve Minors: An Overview of the Discriminatory Effects of Romeo and Juliet Provisions and Sentencing Practices on Lesbian, Gay, Bisexual, and Transgender Youth (2011) 20 Law & Sexuality 97, 111 (applauding Hofsheier for recognizing that “[e]ven a ‘minor exception’ [to Lawrence v. Texas (2003) 539 U.S. 558 [156 L.Ed.2d 508, 123 S.Ct. 2472]] cannot justify discriminatory laws”); Comment, Are Bills of Attainder the New Currency? Challenging the Constitutionality of Sex Offender Regulations that Inflict Punishment Without the "Safeguard of a Judicial Trial” (2010) 37 Pepp. L.Rev. 1301, 1325 and footnote 141 (Hofsheier is an example of a court appropriately protecting the constitutional rights of sex offenders); Comment, Romeo and Romeo: Coming Out from Under the Umbrella of Sexual Abuse (2009) 8 Whittier J. Child & Fam. Advoc. 237, 252 (Hofsheier exemplifies principle that “[t]reating such sexual conduct between minors of the same or similar age differently on the basis of whether the sexual conduct has the capacity to be procreative violates [equal protection]”).

 Gong and Shapiro, edits., Sexual Privacy After Lawrence v. Texas (2012) 13 Geo. J. Gender & L. 487, 504 (whether an equal protection violation can be found when, as in Hofsheier, “the *893 distinction is between two different sex acts, both committed heterosexually ... is likely to be an area for further legal development in the near future” (fn. omitted)); Note, People v. Hofsheier, 37 Cal.4th 1185 (2006) (2007) 34 W.St.U. L.Rev. 307, 312 (ambivalently observing that Hofsheier “vindicates some of the justifiable rights of sex offenders that are sadly circumvented by the courts” and represents a step by this court “toward losing some of its more archaic rules and codified beliefs” but that “[i]t remains to be seen” whether the court’s resolution of an issue on which the Legislature has not pronounced “is advisable”).

 These facts arose in a California case discussed in an unpublished appellate decision, which under California Rules of Court, rule 8.1115 may not be cited.

 The Hofsheier court used “voluntary” in the restricted sense of willing participation without aggravating circumstances such as the use of force or duress or commission of the act while the victim is unconscious or intoxicated. (Hofsheier, supra, 37 Cal.4th at p. 1193, fn. 2.) I will follow that usage here as well.

 The materials cited in this paragraph are found in the legislative committee and caucus files retained from passage of the 1975 bill. They are cited here not to demonstrate the legislative intent in enacting the measure, which is not in doubt, but to illuminate the general understanding, inside and outside the Legislature, of the bill’s social effect.

 The 2007 enactment of section 290.019, cited in the majority opinion at page 14, does not reflect a contemporary legislative reevaluation of sex offender registration for those committing violations of sections 286 and 288a against minors. The provisions of section 290.019, allowing section 286 and section 288a offenders whose crimes were committed with a *907 consenting adult prior to 1976 to seek relief from their registration requirements, were actually enacted a decade earlier as a subdivision of section 290. (Stats. 1997, ch. 821, § 3, pp. 5697, 5698-5699 [adding subd. (a)(2)(F) to § 290].) That legislation was intended to “address an unknown number of persons required to register for acts which once were criminal- — specified sexual activities between consenting adults — which no longer are criminal under current law.” (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 290 (1997-1998 Reg. Sess.) as amended May 1, 1997, p. 5.) The 1997 legislative decision to provide a means of registration relief for what was by then noncriminal conduct with adults does not reflect a decision on the comparative merits of mandatory registration for oral copulation with minors and unlawful sexual intercourse with minors.

 A few of the many possible examples: People v. Doyle (2013) 220 Cal.App.4th 1251, 1264 [164 Cal.Rptr.3d 86] (“DUI offenders with prior DUI manslaughter convictions are not similarly situated with DUI offenders who have prior convictions other than for DUI manslaughter”); Shoemaker v. Harris (2013) 214 Cal.App.4th 1210, 1226-1231 [155 Cal.Rptr.3d 76] (Legislature could rationally require registration for possession of child pornography despite omission of arguably more culpable offenses); People v. Brandao (2012) 203 Cal.App.4th 436, 445-448 [137 Cal.Rptr.3d 672] (defendant convicted of annoying or molesting a child not similarly situated with one convicted of voluntary sex acts with a minor); People v. Miranda (2011) 199 Cal.App.4th 1403, 1427-1429 [132 Cal.Rptr.3d 315] (same as to defendant convicted of sex acts with a victim incapable of giving consent due to mental disability); People v. Honan (2010) 186 Cal.App.4th 175, 180-183 [111 Cal.Rptr.3d 351] (defendant convicted of indecent exposure not similarly situated, for registration purposes, with one convicted of a lewd act in public); People v. Valdez (2009) 174 Cal.App.4th 1528, 1531-1532 [95 Cal.Rptr.3d 367] (Legislature could rationally bar probation for forcible sexual penetration with a foreign object but not for forcible spousal rape).