Filed 2/4/15  P. v. Demar CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE, |  |
| Plaintiff and Respondent, | C074212 |
| v. | (Super. Ct. No. 11F01641) |
| CHARLES GILBERT DEMAR, |  |
| Defendant and Appellant. |  |

A jury convicted defendant Charles Gilbert Demar of manufacturing methamphetamine (counts one and four), transporting methamphetamine (count two) and possessing methamphetamine for sale (count three).  The jury also found true allegations that defendant committed the offenses for the benefit of a criminal street gang and that he had three prior serious or violent felony convictions and a prior controlled substance conviction.

The trial court sentenced defendant to an aggregate of 84 years to life in prison, consisting of the following:  on count one, 25 years to life plus four years for the gang enhancement; on count two, 25 years to life plus one year for the gang enhancement;

1

on count three, 25 years to life stayed pursuant to section 654; on count four, 25 years to life plus one year for the gang enhancement; and three years for the prior controlled substance conviction.

Defendant now contends (1) the same gang-related conduct cannot be used both to elevate the current offenses to serious felonies and to trigger gang enhancements on those same offenses; (2) the prior controlled substance conviction in the State of Nevada does not support the enhancement under Health and Safety Code section 11370.2, because the statutory elements in Nevada and California are different; and (3) there was insufficient evidence to support the gang enhancements.

We will reverse the true finding on the Health and Safety Code section 11370.2 enhancement allegation and remand that enhancement allegation for retrial. We will affirm the judgment in all other respects.

BACKGROUND

While Citrus Heights police officers had defendant under surveillance on March 2, 2011, defendant entered his white pickup truck holding a black backpack. Defendant drove away and police followed him. Sacramento County Sheriff's Sergeant Steve Ferry also began following defendant and activated his overhead lights. When another police vehicle activated its siren, the white truck exited the highway at Bradshaw Road. Sergeant Ferry saw that something was thrown from the passenger side window of the truck. The object appeared to be a white item inside a plastic bag.

Officers arrested defendant when he eventually stopped. Defendant had $611 in his wallet and $13 in a pants pocket. The backpack inside the truck contained straws, unused resealable baggies, tweezers, three vials containing powders, indicia pertaining to defendant, and two bindles of methamphetamine weighing 7.5 grams and 5.9 grams. Officers also found a cell phone in the truck.

Officers also found a large resealable bag on the side of the road. The bag

2

contained a working digital scale, several other resealable bags, and a substance the officers recognized as methamphetamine.

Detectives went to defendant's residence the next day. They found two plastic bins containing glass beakers, flasks, tubing, coffee filters, a funnel, and other items typically found in a clandestine methamphetamine laboratory. They also found a two-burner hot plate in a closet and a glass bowl containing a white substance in the kitchen freezer. In addition, the detectives found pseudoephedrine, one of the essential ingredients of methamphetamine. They took samples of substances from inside an assortment of glassware and seized clothing, including two jackets depicting Adolf Hitler. And in a nearby locked garage that defendant rented, the detectives found chemicals commonly used to manufacture methamphetamine.

In the opinion of the detectives, the items found inside the apartment and garage were possessed for the purpose of manufacturing methamphetamine, and the methamphetamine thrown from the truck had been possessed for sale. When arrested, defendant did not display signs of chronic methamphetamine use or appear to be under the influence of methamphetamine.

Tests of substances from defendant's backpack confirmed the presence of methamphetamine and revealed the presence of dimethylsulfone, commonly known as MSM, which is used clandestinely as cutting material for methamphetamine. The substance thrown from defendant's truck contained amphetamine and methamphetamine. Powders found in defendant's backpack contained amphetamine, methamphetamine, red phosphorus, iodine, and triprolidine, a cough expectorant. Methamphetamine was found with the other chemicals in the garage, indicating completion of the manufacturing process.

Citrus Heights Police Officer David Gutierrez testified as an expert on white criminal street gangs. He explained that Citrus Heights police officers "validate" individuals as gang members when they satisfy at least two designated criteria.

"Skinheads" are a white criminal street gang with a racist ideology. Their enemies include black criminal street gangs, homosexuals, and Jews. Skinheads are not territorial in the same way as other gangs. Their primary symbols include swastikas, lightning bolts, murals of Adolf Hitler, the letters SWP (which stand for supreme white power or supreme white pride), Odin's Rune symbols, the numbers 14 and 88, and the Celtic cross. Skinhead gang members commonly wear lace-up boots, flight jackets, khaki pants, and suspenders.

Validated Skinhead subsets in Sacramento County include the Sacramento Skinheads, the western hammer skins, World Church of the Creator, Aryan Nation, and American front. The Sacramento County Sheriff's Department has validated 94 male members of the Sacramento Skinheads. The gang's primary activities include robbery, burglary, assault with a deadly weapon, identity theft, vehicle theft, possession of firearms by felons, and methamphetamine sales. Officer Gutierrez described predicate offenses committed by Sacramento Skinheads in 2001 and 2010. Defendant committed two of the offenses.

Defendant's gang or "street" name is "Boots." He has a tattoo of a Doc Marten boot, plus many other tattoos that have gang significance. Photographs show him with Skinheads and other Sacramento Skinheads. He wore white laces on his boots, which identified him as a Skinhead, and his jacket displayed Skinhead symbols. He appeared in a photograph wearing a shirt with the number 88 (representing H, the eighth letter, twice, signifying Heil Hitler) and a necklace with a medallion of Thor's hammer, a symbol popular among white supremacists.

In the opinion of Officer Gutierrez, defendant is a member of the Sacramento Skinheads gang. Defendant's current crimes benefited the gang. By manufacturing methamphetamine, he was able to furnish it to fellow gang members. His possession of methamphetamine for sale helped to finance gang activities; and his transportation of methamphetamine helped to distribute the drug.

4

Defendant's cellular telephone contained digital video files. The jury saw the videos. One video depicted hydrogen chloride gas causing methamphetamine to fall out of the solution in which it had been suspended. Defendant appeared in the videos, which were made in his apartment on February 23, 2011. A framed photograph of red and black boots is visible in the background of the video. Officer Gutierrez addressed the significance of boots by explaining, "one thing that most Skinheads will wear in common are boots that look like either Doc Martens or very similar to Doc Marten boots, . . . the black calf-height boots."

Defendant's cellular telephone also contained copies of text messages. One message, sent on February 26, 2011, read: "Two gallons acetone, one gallon odorless mineral spirits, ten feet of braided hose half-inch diameter." Another message, sent the same day to the same telephone number, read, "Need ASAP." The messages were sent to a validated member of the Skinheads gang. A message received by defendant's telephone read, "If you can front me some, I'll pay you tomorrow." To "front" narcotics means to furnish narcotics on credit.

Defendant had a prior conviction for first degree burglary, two prior convictions for assault with a deadly weapon, and a prior Nevada conviction for manufacturing or attempting to manufacture methamphetamine.

The sole witness for the defense was Randall Holmes. He was associated with the Sacramento Skinheads from 1986 to 2011, and at one point he served as an "elder" of the group. He described the Sacramento Skinheads as a "philosophy" and a "racial belief system." To be a member, one must be white and from Sacramento. All members are tattooed with the words "Sacto Skins." There are no formal dues, fees, taxes, or treasury. By the time of trial, the group was "defunct."

Holmes went to prison in 1994. While incarcerated, his then-wife left him and began a relationship with defendant. Thereafter, defendant and Holmes had animosity for

5

one another.  But in 2009, they became better acquainted and "ended up liking each other a lot."  Holmes became an apprentice in the tattoo parlor where defendant worked.

According to Holmes, defendant was not a Sacramento Skinhead.  He was not from Sacramento and did not have the identifying tattoo.  Defendant supported himself through his tattoo art and asbestos removal.  He also sang for the band Storm Troop 16.

In 2010, defendant told Holmes that he had resumed using methamphetamine.  Holmes told defendant to stop using and to call him when he was clean.  Holmes never saw defendant after that.  The Skinheads do not condone drug use.  Holmes was not aware of any Sacramento Skinheads who directed or benefited from defendant's manufacture of methamphetamine.

Holmes had prior convictions for first degree burglary, possession of LSD, possession of psilocybin, possession of a firearm by a convicted felon, and multiple counts of armed robbery.

The jury found defendant guilty of manufacturing methamphetamine (Health & Saf. Code, § 11379.6, subd. (a) -- counts one & four), transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a) -- count two), and possession of methamphetamine for sale (Health & Saf. Code, § 11378 -- count three).  The jury also found true allegations that defendant committed the offenses for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further, or assist in criminal conduct by gang members (Pen. Code, § 186.22, subd. (b)(1))[1] and that defendant had three prior serious or violent felony convictions (§§ 667, subds. (b)-(i), 1170.12) and a prior controlled substance conviction (Health & Saf. Code, § 11370.2, subds. (b) & (f)).

The trial court sentenced defendant to an aggregate of 84 years to life in prison,

---

[1] Undesignated statutory references are to the Penal Code.

6

consisting of the following:  on count one, 25 years to life plus four years for the gang enhancement; on count two, 25 years to life plus one year for the gang enhancement; on count three, 25 years to life stayed pursuant to section 654; on count four, 25 years to life plus one year for the gang enhancement; and three years for the prior controlled substance conviction.

DISCUSSION

I

Defendant contends the same gang-related conduct cannot be used both to elevate the current offenses to serious felonies and to trigger gang enhancements on those same offenses.

"Section 186.22(b)(1)(A) provides that a person convicted of 'a felony' that is gang related shall receive, at the court's discretion, an additional two-, three-, or four-year term at sentencing.  Section 186.22(b)(1)(B) provides that a person convicted of 'a serious felony' that is gang related shall receive an additional five-year term at sentencing.  Section 186.22(b)(1)(C) provides that a person convicted of a 'violent felony' that is gang related shall receive an additional 10-year term at sentencing." (*People v. Briceno* (2004) 34 Cal.4th 451, 464-465 (*Briceno*).)

Section 1192.7, subdivision (c)(28) defines a "serious felony" to include any felony offense committed for the benefit of a criminal street gang under the section 186.22, subdivision (b)(1) gang enhancement.  (*Briceno, supra,* 34 Cal.4th at p. 464.)

"On November 6, 2012, voters approved Proposition 36, the Three Strikes Reform Act of 2012 (the Act).  Under the three strikes law (§§ 667, subds. (b)–(i), 1170.12) as it existed prior to Proposition 36, a defendant convicted of two prior serious or violent felonies would be subject to a sentence of 25 years to life upon conviction of a third felony.  Under the Act, however, a defendant convicted of two prior serious or violent felonies is subject to the 25-year-to-life sentence only if the third felony is itself a serious or violent felony.  If the third felony is not a serious or violent felony, the defendant will

7

receive a sentence as though the defendant had only one prior serious or violent felony conviction, and is therefore a second strike, rather than a third strike, offender." (*People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1285-1286, italics omitted.)

In this case, the jury found the section 186.22, subdivision (b)(1) gang enhancement allegation true on each count. The jury also found that defendant had three prior serious or violent felony convictions. At sentencing, defense counsel recognized that defendant was facing three consecutive terms of 25 years to life. But he objected to imposition of additional gang enhancements, arguing that the trial court would be "double punishing" defendant because the same gang conduct that qualified him for third strike (as opposed to second strike) sentencing also qualified him for enhancements. Defense counsel argued the sentences were "either cruel and unusual punishment, or it's double punishing him in violation of [section] 654." The trial court concluded the enhancements did not amount to double sentencing and imposed enhancement sentences consistent with section 186.22, subdivision (b)(1)(A): four years on count one (the upper term); one year consecutive on count two (one-third the mid-term); one year consecutive on count three (one-third the mid-term), stayed pursuant to section 654; and one year consecutive on count four (one-third the mid-term).

Defendant relies on the holding in *Briceno, supra,* 34 Cal.4th 451, but that case does not assist him. In *Briceno*, the California Supreme Court held that "while it is proper to define any felony committed for the benefit of a criminal street gang as a serious felony under section 1192.7(c)(28), it is improper to use the *same* gang-related conduct *again* to obtain an additional five-year sentence under section 186.22[, subdivision] (b)(1)(B)." (*Briceno, supra*, 34 Cal.4th at p. 465.) Here, however, the trial court did not impose additional five-year enhancements under section 186.22, subdivision (b)(1)(B).

Because the jury determined that the current felony offenses were committed for

the benefit of a criminal street gang under section 186.22, subdivision (b)(1), the offenses were serious felonies for the purposes of imposing indeterminate 25-to-life sentences under the Three Strikes Reform Act of 2012. (§§ 667, subds. (b)-(i), 1170.12, 1192.7, subd. (c)(28).) But to avoid the impermissible bootstrapping prohibited by the California Supreme Court in *Briceno*, the offenses were not serious felonies for the purposes of imposing enhancements under section 186.22, subdivision (b)(1)(B). Instead, the trial court imposed enhancements under section 186.22, subdivision (b)(1)(A), thus giving full effect to voter and legislative intent while avoiding the concerns expressed in *Briceno*.

"In enacting section 186.22, the Legislature sought to provide an alternative sentencing scheme, producing harsher punishment for gang-related offenses." (*People v. Arroyas* (2002) 96 Cal.App.4th 1439, 1444.) In amending section 186.22 pursuant to Proposition 21, the electorate intended to increase the penalties for all gang-related crime. (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 907.) The Legislature and the electorate have not indicated that a section 186.22, subdivision (b)(1)(A) enhancement does not apply when another provision of law defines the same act as a serious felony. Rather, the Legislature has expressed the intent to impose three strikes sentencing " 'in addition to any other enhancement or punishment provisions which may apply' [citation] 'to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of . . . serious and/or violent felony offenses.' [Citation.]" (*People v. Doyle* (2013) 220 Cal.App.4th 1251, 1260.) The electorate has expressed the same intent. (*People v. Tillman* (1999) 73 Cal.App.4th 771, 781-782.) Defendant's argument that his three strikes sentence bars application of the "other enhancement or punishment provisions" of section 186.22 is contrary to the intent of the Legislature and the electorate and thus lacks merit. (*Ibid.*)

II

Defendant next contends his prior controlled substance conviction in the State of Nevada does not support the enhancement under Health and Safety Code section

9

11370.2, because the statutory elements in Nevada and California are different. Specifically, he claims that unlike the California law, the Nevada statute could be violated by an attempt. The People agree.

Pursuant to Health and Safety Code section 11370.2, subdivisions (b) and (f), the information alleged that defendant had been convicted of violating Nevada Revised Statutes 453.321 on April 21, 2000, in Clark County, Nevada. To prove the prior conviction, the People introduced into evidence the Nevada amended information, the second amended information, the guilty plea agreement, the amended judgment of conviction, and court minutes from the guilty plea and sentencing. Count II of the charging documents accused defendant of violating Nevada Revised Statutes section 453.321, asserting that he "did then and there willfully, unlawfully and feloniously manufacture or compound, or offer *or attempt to manufacture or compound*, a controlled substance, to-wit: Methamphetamine, or did possess a majority of the ingredients required to manufacture or compound said controlled substance." (Italics added.)

The plea agreement recites that defendant agreed to plead guilty to, among other things, "ONE (1) COUNT--MANUFACTURE A CONTROLLED SUBSTANCE (Category B Felony – NRS 453.321), as more fully alleged in the charging document attached hereto as Exhibit '1.' " The minute order recites that defendant pleaded guilty to, among other things, "COUNT II – MANUFACTURE A CONTROLLED SUBSTANCE (F)."

Health and Safety Code section 11370.2, subdivision (b), provides in relevant part: "Any person convicted of a violation of, or of a conspiracy to violate, Section . . . 11379.6 . . . shall receive, in addition to any other punishment authorized by law, . . . a full, separate, and consecutive three-year term for each prior felony conviction of, or for each prior felony conviction of conspiracy to violate, Section . . . 11379.6 . . . , whether or not the prior conviction resulted in a term of imprisonment." Subdivision (f) of the

10

statute provides that "[p]rior convictions from another jurisdiction qualify for use under this section . . . ." (Health & Saf. Code, § 11370.2, subd. (f).)

Nevada Revised Statutes section 453.321, paragraph 1, makes it unlawful to "(a) Import, transport, sell, exchange, barter, supply, prescribe, dispense, give away or administer a controlled or counterfeit substance; (b) Manufacture or compound a counterfeit substance; or (c) Offer or attempt to do any act set forth in paragraph (a) or (b)."

The parties agree that "[t]he Nevada statute may be violated by attempt, conduct which is not criminal under the corresponding California statute." Indeed, in California, "attempts of most crimes are not defined within a statute, but are governed by the general attempt statute (§ 21a). [Citation.]" (*People v. Medina* (2007) 41 Cal.4th 685, 697.) "Although certain crimes and a conspiracy to commit certain crimes are listed [in Health and Safety Code section 11370.2], an *attempt* to commit a certain crime is not listed. An attempt to commit a crime is neither a completed crime nor a conspiracy to commit a crime. An attempt is an offense 'separate' and 'distinct' from the completed crime. [Citations.]" (*People v. Reed* (2005) 129 Cal.App.4th 1281, 1283.) "As the statute now reads, neither a current conviction of an attempt to commit a specified crime nor a prior conviction of an attempt to commit a specified crime supports an enhancement under [Health and Safety Code] section 11370.2, subdivision (a). '[I]f the Legislature had intended to include attempts in the enhancement provisions, it would have specifically stated the enhancement applie[d] to the "commission or attempted commission" of specific crimes . . . .' [Citation.]." (*Id.* at p. 1285.)

Because no evidence established that defendant's prior Nevada conviction involved a completed manufacture rather than an attempted manufacture, the evidence did not establish that defendant's prior Nevada conviction was for an offense that qualified as an enhancement under Health and Safety Code section 11370.2, subdivision (b). We will reverse the true finding on the enhancement allegation and

11

remand the enhancement allegation for retrial.  (See *People v. Barragan* (2004) 32 Cal.4th 236, 259.)

III

In his supplemental opening brief, defendant contends there was insufficient evidence to support the gang enhancements.

" ' "On appeal we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence -- that is, evidence that is reasonable, credible, and of solid value -- from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citations.]  The standard of review is the same in cases in which the People rely mainly on circumstantial evidence.  [Citation.] 'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt.  " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.' " [Citations.]' [Citation.]" ' [Citation.]  Thus, '[w]e presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.  [Citation.]' [Citations.]  'Unless it is clearly shown that "on no hypothesis whatever is there sufficient substantial evidence to support the verdict" the conviction will not be reversed.  [Citation.]' [Citation.]  The same standard of review applies to true findings on gang enhancement allegations.  [Citation.]"  (*People v. Williams* (2009) 170 Cal.App.4th 587, 623-624 (*Williams*).)

Section 186.22, subdivision (b)(1), provides sentencing enhancements for "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members."  A "criminal street gang" is "any

12

ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (25), inclusive, or (31) to (33), inclusive, of [section 186.22, ]subdivision (e), having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity."  (§ 186.22, subd. (f); *People v. Gardeley* (1996) 14 Cal.4th 605, 616-617 (*Gardeley*).)

A " 'pattern of criminal gang activity' means the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more of [33 listed] offenses, provided at least one of these offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons . . . ."  (§ 186.22, subd. (e); *Gardeley, supra*, 14 Cal.4th at pp. 616-617.)

Defendant claims the evidence fails to support either element of the gang enhancement.  We first consider whether there was sufficient evidence that the felonies were committed "for the benefit of, at the direction of, or in association with any criminal street gang." (§ 186.22, subd. (b)(1).)

The evidence supports an inference that defendant manufactured methamphetamine "in association with" John Hovis, a validated member of the Skinheads gang.  (§ 186.22, subd. (b)(1).)  Defendant sent a text message to Hovis regarding materials and ingredients used in the manufacturing process.  The message referred to "[t]wo gallons acetone, one gallon odorless mineral spirits, ten feet of braided hose half-inch diameter."  Within the next minute and a half, defendant sent a second message saying "Need ASAP."

The jury was not compelled to draw the less reasonable inference that defendant had risked detection of his clandestine enterprise by urgently requesting items commonly

13

associated with methamphetamine manufacturing from a person who was not associated with his efforts. Rather, the jury could draw the more reasonable inference that defendant had put this request to an associate who would not reveal his secret activities.

Although detectives never interviewed John Hovis or determined whether he had responded to defendant's messages, the statute does not require a minimum level of participation or response from an associate. There is no merit to defendant's claim that the evidence supporting the association element was insufficient. (*Williams, supra*, 170 Cal.App.4th at pp. 623-624.)

We next consider the sufficiency of the evidence that the felonies were committed with the "specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1).) Defendant claims the jury could not reasonably infer the requisite intent, in part because "[h]e made no reference to the gang on the video."[2] But although the video contained no verbal reference to the Skinhead gang, it nonetheless contained a visual reference. The framed photograph of boots is visible in the background. Defendant's gang or street name is "Boots" and he has a tattoo of a Doc Marten boot. Like visual hand gestures or graffiti, the visual reference to defendant's gang moniker and to apparel favored by Skinheads supported an inference that the drug manufacturing depicted in the foreground of the video was intended to promote the activities of the gang. The fact the jury could have drawn an opposite inference does not warrant reversal of the judgment. (*Williams, supra*, 170 Cal.App.4th at pp. 623-624.)

Defendant notes there was no evidence that he posted the video or showed it to anyone. But the video nevertheless provides useful insight into defendant's intent at the time it was made.

---

[2] Defendant cites *People v. Ochoa* (2009) 179 Cal.App.4th 650, 661-663, but his reliance on that case is misplaced. The specific intent prong of the statute was not at issue in that case. (*Ochoa, supra,* 179 Cal.App.4th at p. 661, fn. 7.)

Defendant also argues that the testimony of Officer Gutierrez, the gang expert, was not " ' "rooted in facts shown by the evidence" ' " and his opinions were "improper assumptions based on ' "facts divorced from the actual evidence and for which no evidence was ever introduced." ' "  We disagree.

Officer Gutierrez described predicate offenses committed by Sacramento Skinheads in 2001 and 2010, and defendant committed two of the offenses.  Officer Gutierrez also explained that defendant had tattoos, clothes and a street name that had gang significance.  In addition, defendant appeared in photographs with Skinheads and other Sacramento Skinheads, and in a video depicting methamphetamine falling out of solution, a framed photograph of red and black boots is visible.  Defendant also sent text messages about chemicals to a validated member of the Skinheads gang.  A message received by defendant's telephone read, "If you can front me some, I'll pay you tomorrow."

We conclude there was sufficient evidence to support the gang enhancements.

DISPOSITION

The true finding on the Health and Safety Code section 11370.2 enhancement allegation is reversed, and the enhancement allegation is remanded for retrial.  In all other respects, the judgment is affirmed.

 

          MAURO      , J.

We concur:

     NICHOLSON   , Acting P. J.

     HOCH     , J.

15